## ANTHONY BULLUCK ET AL. *v.* PELHAM WOOD APARTMENTS

[No. 142, September Term, 1977.]

*Decided September 7, 1978.*

506

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*W. Stanwood Whiting, Assistant General Counsel for Commission on Human Relations,* with whom was *George A. Shehan, General Counsel,* on the brief, for appellants.

*Stuart L. Sagal,* with whom were *Bass & Denick, P.A.* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This is an action for judicial review of the decision of the Maryland State Commission on Human Relations in an alleged housing discrimination case.

On or about August 1, 1973, Anthony Bulluck, a black man, visited the Pelham Wood Apartments in order to find housing for his mother and himself. Pelham Wood Apartments is a 464-unit facility, located in Baltimore County, Maryland. In his complaint to the Commission on Human Relations, Bulluck alleged that Pelham Wood Apartments had treated him in a discriminatory fashion.

Bulluck's complaint stated that he went into the rental office at the Pelham Wood Apartments on August 1, 1973. Two salespersons were in the office. One was speaking with two white women, and the other salesperson, after a conversation with her co-worker, came over to Bulluck. Bulluck stated that the second salesperson told him that they had nothing in one, two or three bedroom apartments. Bulluck left the office feeling angry because he believed that the first salesperson was in the process of signing a rental agreement with the two white women. Bulluck became more angry when he noticed two vacant buildings in the apartment complex. Although he was not aware of it at the time, these buildings had been damaged when a tornado struck the area on June 16, 1973, and had been empty since that time. Bulluck filed a formal complaint with the Commission on August 13, 1973, stating that "[i]t was very obvious they wanted to get rid of me in a hurry, and had no intention of renting to a Black."

The Commission on Human Relations commenced an investigation and served a copy of the complaint on the resident agent of Mark-Hall, Inc., the corporation that owns

and operates Pelham Wood Apartments, on September 11, 1973. By October 31, 1973, the Commission had completed its investigation. It determined that there was probable cause to believe that Pelham Wood Apartments had violated Maryland Code (1957, 1972 Repl. Vol.), Art. 49B, § 22, which prohibits various discriminatory housing practices. The Commission took action to encourage conciliation of the matter but concluded, on January 24, 1974, that conciliation had failed. The Commission then certified the case for public hearing pursuant to Art. 49B, § 14 (a). A three-person tribunal of the Commission heard the case on October 4, 1975.

Before the hearing tribunal, Bulluck offered his own testimony, that of a Commission investigator, and that of two teams of testers who were sent out by the Commission in September 1973 to compare any differences in treatment given to potential black and white tenants by rental agents of Pelham Wood. Pelham Wood, on the other hand, called its president, a marketing expert, and four current black tenants to testify as to its rental practices and policies.

The Commission's hearing tribunal issued its decision and order in early 1976. The Commission made, *inter alia,* the following findings of fact:

> "3. At that time Complainant presented himself at the rental office of Pelham Wood Apartments, he was informed that there were no two-bedroom apartments available in the immediate future; he was further informed that neither one-bedroom nor three-bedroom apartments were available. Complainant was not asked any information with regard to his income; he was told that there was no waiting list; and he was not given any promotional literature concerning the apartments.

> "4. At the time Complainant visited the rental office of Pelham Wood Apartments, there was a one-bedroom and den apartment available. During that period in August, 1973, there averaged about three vacancies per month in one-bedroom and den apartments.

"5. On or about September 14, 1973, one Eleanor Edwards, a Black woman, appeared at the rental office of Pelham Wood Apartments at approximately 1:00 p.m., inquiring into the availability of two-bedroom apartments. She was told that none were available.

"6. On the same day that Ms. Edwards appeared at the rental office of the Respondent at 1:00 p.m., Mary C. Conner, a White woman, visited that same rental office at approximately 2:00 p.m. in the afternoon, inquiring as to the availability of a two-bedroom apartment. Ms. Conner was advised that a two-bedroom apartment would be available on November 15, 1973, and further, that two others would be available on December 1, 1973, and December 15, 1973. In contrast to the experience related by Ms. Edwards, Ms. Conner was encouraged to make application for an apartment and was given a business card."

The hearing tribunal went on to conclude that Pelham Wood Apartments had engaged in an unlawful discriminatory housing practice in violation of Art. 49B, § 22, of the Code:

"Upon the foregoing findings of fact, the Hearing Tribunal concludes that the Respondent has engaged in an unlawful discriminatory housing practice. There was testimony as to the availability of a one-bedroom and den apartment at the same time the complaining witness was advised that there were neither one, two or three-bedroom apartments available; ... it was October 1973 that one of Respondent's agents had told Ms. Gonsouland that such an apartment was available at the time the complainant had inquired regarding the same....

"Any doubt that the treatment the Complainant received from the Respondent's agents was nothing more than an unfortunate mistake is dispelled by the testimony of [the testers] Ms. Edwards and Ms. Conner, the former, Black and the latter, White, who

followed each other nearly immediately into that same rental office, which testimony established beyond any doubt the Respondent's agents were committing unlawful discriminatory housing practices in violation of Article 49B, Section 22 of the Annotated Code of Maryland. . . ."

The tribunal issued an order pursuant to § 14 (e) of Art. 49B, calling upon Pelham Wood to "cease and desist from all discriminatory practices under the subtitle 'Discrimination in Housing' of Art. 49B" and to initiate an affirmative action program. Pelham Wood was ordered to provide the Commission with a list of all of the apartments which it owned and managed, to post lists of these apartments in a location that would be conspicuous to potential tenants at all its apartment complexes and at the Commission office, to include the phrase "Equal Housing Opportunity" clearly written on its signs, to formulate a tenant selection policy subject to Commission review, to notify all of its rental agents connected with approval of applications of its tenant selection policy, to initiate a program of tenant recruitment, and to maintain a waiting list.

Pelham Wood appealed to the Circuit Court for Baltimore County, asking the court to review the Commission's findings and order. Pelham Wood contended, *inter alia,* that the Commission's findings were unsupported by substantial evidence, were against the weight of the evidence, and were arbitrary and capricious. The circuit court agreed with Pelham Wood and overturned the Commission's order on the ground that the Commission's decision was not supported by substantial evidence.

Bulluck and the Commission took an appeal to the Court of Special Appeals, and we granted a writ of certiorari before any decision by the Court of Special Appeals.

The appellants' argument is that there was substantial evidence in the administrative record to support the Commission's findings. They point to evidence that there was a one bedroom and den apartment available at Pelham Wood in August 1973, and they contrast this with the statements

by Pelham Wood's agent that no one, two or three bedroom apartments were available at the complex. The appellants also maintain that the evidence before the agency shows that Bulluck was treated discourteously, was told that there was no waiting list when he asked to sign one, was offered no brochures or other information, was not requested to give any salary or credit information, and was not referred to other nearby apartment facilities under the same management. According to appellants, these facts, combined with the results of the Commission's investigation, amply support the Commission's finding of racially discriminatory housing practices in violation of Art. 49B, § 22.

Pelham Wood, on the other hand, attempts to show the insubstantiality of Bulluck's case by arguing that Bulluck only inquired about two bedroom apartments and none were available, that the Commission's investigation and testers gave inaccurate testimony, that Pelham Wood Apartments' rental practices were nondiscriminatory, and that its advertising effectively reached the black population in the apartment complex's primary marketing area. In addition to its principal argument that the Commission's decision was unsupported by substantial evidence, Pelham Wood claims that the Commission committed other errors warranting a reversal of its order.

I.

Our review of the Human Relations Commission's decision, like the circuit court's, is based on the test set forth in the Maryland Administrative Procedure Act, Code (1957, 1978 Repl. Vol.), Art. 41, § 255 (g):

> "(g) *Affirmance, remand, reversal or modification of decision.* — The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have

been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

\* \* \*

"(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

\* \* \*

"(8) Arbitrary or capricious."

"Substantial evidence," as the test for reviewing factual findings of administrative agencies, has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Snowden v. Mayor & C.C. of Balto.,* 224 Md. 443, 448, 168 A. 2d 390 (1961). The scope of review "is limited 'to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached,' " *Dickinson-Tidewater v. Supervisor,* 273 Md. 245, 256, 329 A. 2d 18 (1974). *See Pemberton v. Montgomery County,* 275 Md. 363, 367-368, 340 A. 2d 240 (1975); *Supervisor v. Peter & John Radio,* 274 Md. 353, 355-356, 335 A. 2d 93 (1975); *St. Comm'n On Human Rel. v. Malakoff,* 273 Md. 214, 224, 329 A. 2d 8 (1974); *Gutwein v. Easton Publishing Co.,* 272 Md. 563, 567, 325 A. 2d 740 (1974), *cert. denied,* 420 U. S. 991, 95 S. Ct. 1427, 43 L.Ed.2d 673 (1975). And *see generally Universal Camera Corp. v. Labor Board,* 340 U. S. 474, 71 S. Ct. 456, 95 L. Ed. 456 (1951); *Consolidated Edison Co. v. Labor Board,* 305 U. S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938); 4 K. Davis, *Administrative Law Treatise* §§ 29.01, at 114-126 (1958 ed.); L. Jaffe, *Judicial Control of Administrative Action,* 600-615 (1965); Jaffe, *Judicial Review: "Substantial Evidence on the Whole Record,"* 64 Harv. L. Rev. 1233 (1951); Stason, *"Substantial Evidence" in Administrative Law,* 89 U. Pa. L. Rev. 1026 (1941); Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis,* 58 Harv. L. Rev. 70 (1944); Tomlinson, *Constitutional Limits on the Decisional Powers of Courts and Administrative Agencies in Maryland,* 35 Md. L. Rev. 414, 416-425 (1976).

In applying the substantial evidence test, we have emphasized that a "court should [not] substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230, 156 A. 2d 657 (1959), *appeal dismissed*, 363 U. S. 419, 80 S. Ct. 1257, 4 L.Ed.2d 1515 (1960). We also must review the agency's decision in the light most favorable to the agency, since "decisions of administrative agencies are prima facie correct," *Hoyt v. Police Comm'r*, 279 Md. 74, 88-89, 367 A. 2d 924 (1977), and "carry with them the presumption of validity," *Dickinson-Tidewater, Inc. v. Supervisor, supra,* 273 Md. at 256; *Heaps v. Cobb,* 185 Md. 372, 378, 45 A. 2d 73 (1945). Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences. *Labor Board v. Nevada Consolidated Copper Corp.,* 316 U. S. 105, 106-107, 62 S. Ct. 960, 86 L. Ed. 1305 (1942); *Board v. Levitt & Sons,* 235 Md. 151, 159-160, 200 A. 2d 670 (1964); *Snowden v. Mayor & C.C. of Balto., supra,* 224 Md. at 448.

## II.

Turning to the present case, the appellants argue that the record contains sufficient evidence to support the Commission's decision that there was a violation of subsections (1) and (4) of Art. 49B, § 22, which provide:

> "It shall be an unlawful discriminatory housing practice, because of race, color, religion, sex, national origin, marital status, or physical or mental handicap, for any person having the right to sell, rent, lease, control, construct, or manage any dwelling constructed or to be constructed, or any agent or employee of such person:
>
> "(1) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling.

* * *

"(4) To represent to any person, for reasons of discrimination, that any dwelling is not available for inspection, sale or rental when such dwelling is in fact so available."

Under the above-quoted statutory language, and in light of the Commission's findings and its theory of the case, in order to uphold the conclusion that there had been a violation, a court would have to find substantial evidence showing (1) that Pelham Wood engaged in a misrepresentation concerning present or future apartment availability, and (2) that such misrepresentation was made for discriminatory reasons.

With regard to the representation to Mr. Bulluck concerning the availability of apartments, Bulluck testified that after he asked Pelham Wood's agent about the availability of two bedroom apartments and was told that there were no vacancies, he then inquired as to the availability of one and three bedroom apartments. He further testified that the rental agent told him that no one or three bedroom units were available either. The attorney for Pelham Wood conceded at the administrative hearing that Bulluck had inquired as to the availability of one and three bedroom units. As to whether this amounted to an affirmative misrepresentation of availability, Ms. Gonsouland, the Commission investigator, testified that she was told by the same agent that a one bedroom and den apartment had in fact been available "during the month of August." Further, the president of the company that owns Pelham Wood responded to a question concerning apartment availability in August as follows:

"Q. What I am saying is that you can't testify that here today, under that, that the apartment was not available on August 1st, 1973?
"A. Absolutely not. I can't say that here, no."

Finally, the same witness testified from Pelham Wood's records that there were apartments whose tenants gave lease termination notices in July 1973, and that no new leases for such apartments had been signed by the time of Mr. Bulluck's visit; however, there was no testimony otherwise concerning

the availability of these apartments as of the date Mr. Bulluck visited Pelham Wood.

This is essentially all of the evidence in the present record tending to support the Commission's critical finding that "[a]t the time Complainant visited the rental office of Pelham Wood Apartments, there was a one-bedroom and den apartment available." However, the evidence supporting this finding is equivocal. It is not at all clear to us that when the rental agent told the investigator that a one bedroom and den apartment had been available "during the month of August," she meant that it had been available, or that she knew that it would shortly be available, on the day in the beginning of August when Mr. Bulluck visited the office. It might not be inconsistent with her statement if the apartment did not become available until the latter part of August.[1] Moreover, if this were the case, she might not have known when Mr. Bulluck visited that it would be available at the end of the month. The testimony by the president of Pelham Wood, that he was unable to say that an apartment "was not available on August 1st, 1973," is obviously different from saying that an apartment "was available on August 1st."

Assuming arguendo that the evidence is sufficient to support the conclusion that there was a misrepresentation concerning availability, the evidence tending to show that such misrepresentation was made "for reasons of discrimination" may be somewhat stronger. Our inquiry here is not limited to the facts themselves, but also includes inferences which can be reasonably drawn from the facts. As this Court observed in *Snowden v. Mayor & C.C. of Balto.*, *supra*, 224 Md. at 448:

> "The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual

---

1. The word "during" has been defined as either "1. throughout the duration . . ." or as "2. at some time or point in the course of . . . ." *The Random House Dictionary of the English Language*, p. 443 (Unabridged ed. 1967).

evidence. 'The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.' "

Bulluck himself characterized the rental agent as acting "offish," "nervous," and "evasive." While rude or discourteous treatment alone is not sufficient to make out a violation of § 22 (1) or (4), it may tend to show a discriminatory purpose, especially when the treatment of Bulluck is compared with the detailed discussion that Bulluck observed in progress between the other rental agent and two white women while he was in Pelham Wood's rental office.

Moreover, Mr. Bulluck was given no encouragement that apartments might be available in the future. Although Pelham Wood did not maintain a formal waiting list, the testimony revealed that "[i]f a person asked to put their name on a [waiting list], they would do so." However, Mr. Bulluck testified that he asked for a waiting list, was informed that Pelham Wood did not have any list, and was given no encouragement regarding the possibility of future apartments. In addition, there was testimony that if Pelham Wood had no vacancies when someone came to the rental office, a "normal procedure" of the office was to refer that person to two other apartment complexes under the same ownership. But, according to Mr. Bulluck's testimony, he was not referred to another facility.

Other evidence in the record also may inferentially show different treatment of whites and blacks. While the white testers who visited the rental office in the fall of 1973 were told that a two bedroom apartment would be available in about two months, the black testers who came to the office the same day were told that no two bedroom apartments were available in the near future. Furthermore, the black testers were not referred to any other facilities.

The above-reviewed evidence represents the total evidence adduced at the administrative hearing supporting the Commission's position that Pelham Wood had made a

misrepresentation regarding availability and had done so with a discriminatory intent.[2] Ordinarily, in an administrative review case, we would now proceed to determine whether this met the "substantial evidence" standard. However, we have decided upon a different course of action under the particular circumstances of this case. As previously discussed, the evidence before the administrative agency relating to a misrepresentation concerning availability was unclear and equivocal. This matter should have been more fully developed before the Commission, and could have been clarified or further developed in the circuit court. The Human Relations Commission article of the Code specifically provides with respect to judicial review of Commission decisions (Art. 49B, § 15 (a)):

> "The court, in hearing said case shall be governed by the judicial review standards as set forth in the Administrative Procedures Act, §§ 255-256 of Article 41 of the Annotated Code of Maryland, except that additional evidence if otherwise admissible under the law of evidence, may be presented to the court without the necessity of an application or without the necessity of showing reasons for the failure to present it at the hearing before the Commission."

None of the parties in this case took advantage of this provision by presenting any additional evidence to the circuit court.

Maryland Rule 871 a provides in pertinent part:

> "If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, . . . then this Court, instead of entering a final order affirming, reversing

---

2. There was, on the other hand, considerable evidence presented on behalf of Pelham Wood tending to show no misrepresentation with a discriminatory motivation.

518

or modifying the judgment from which the appeal was taken, may order the case to be remanded.... Upon remand..., such further proceedings shall be had by ... introduction of additional evidence,... or otherwise, as may be necessary for determining the action upon its merits ....

\* \* \* "

In our view, it is appropriate to remand this case to the circuit court under Rule 871 a for the taking of additional testimony. In particular, it would be desirable for the parties to present any additional testimony, records or other documentary evidence that may be obtainable on the issue of apartment availability or whether there was a misrepresentation to Mr. Bulluck concerning apartment availability. In addition, if the parties so choose, they may present additional evidence which is otherwise admissible relating to whether there was a discriminatory purpose or relating to any other material point under Art. 49B, § 22. After additional evidence and argument is received, the circuit court should decide anew the substantial evidence question, as well as any other pertinent issues in the case which are not resolved by our opinion.

### III.

In addition to its principal argument challenging the substantiality of the evidence underlying the Commission's decision, Pelham Wood urges that reversal of the Commission's decision is warranted because of about eight alleged procedural and evidentiary errors committed by the Commission during the administrative proceedings. However, it does not appear from the record that Pelham Wood raised many of these matters before the Commission. To the extent that the alleged procedural and evidentiary errors were not raised before the Commission, Pelham Wood may not raise them for the first time in a judicial review proceeding. As the Supreme Court stated in *Unemployment Compensation*

*Comm'n v. Aragon,* 329 U. S. 143, 155, 67 S. Ct. 245, 91 L. Ed. 136 (1946):

> "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."

*Cf. Cabell Con. Blk. Co. v. Yarborough,* 192 Md. 360, 369, 64 A. 2d 292 (1949).

Furthermore, the circuit court did not decide any of the procedural and evidentiary issues raised in this Court by Pelham Wood. Rule 885 provides that this "Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried *and decided* by the circuit court . . . ." (Emphasis supplied.) The Rule goes on to provide that, in our discretion, a "point . . . of law may be decided by this Court even though it was not decided by the circuit court." Because of the state of the record before us, and because we are remanding the case under Rule 871 for further proceedings in the circuit court, we shall not exercise our discretion to decide the procedural and evidentiary questions which were not decided below. Instead, on remand, the circuit court should decide all such issues which it finds were properly raised before the administrative agency.[3]

---

3. Pelham Wood seems to argue in its brief that, to the extent that it failed to raise some of the procedural or evidentiary issues before the Commission, Art. 49B, § 15 (a), relating to the presentation of additional evidence in the circuit court, authorizes it to raise the issues for the first time in the circuit court. However, we do not believe that Art. 49B, § 15 (a), goes as far as Pelham Wood seems to suggest. There is quite a difference between the presentation of evidence and the making of an objection to an alleged procedural or evidentiary error. The statutory language authorizing the presentation of additional evidence in no way suggests that a party is to be excused for his failure to raise a procedural or evidentiary issue at the administrative level.

In the circuit court, in connection with this same matter, Pelham Wood invoked a provision of the Maryland Administrative Procedure Act, Code (1957, 1978 Repl. Vol.), Art. 41, § 255 (f), which states in pertinent part: "In cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court." This provision likewise does not excuse the failure to raise a timely procedural issue before the agency. Rather, it would provide a means for relief in the reviewing court

## IV.

Pelham Wood also attacks on two grounds the Commission's order.

*First,* it appears to argue that since Mr. Bulluck complained only that *he* was denied an apartment due to race, the order was improperly "class directed" and should not have included the requirement in paragraph 2 (f) that Pelham Wood generally "initiate a program of tenant recruitment designed to reach minorities . . . ." However, the Commission's order in this respect is clearly authorized by the statute. Art. 49B, § 14· (e), provides that if the Commission "finds that the respondent has engaged in *any* discriminatory *act,*" it may order the respondent "to cease and desist from the discriminatory acts *and* to take such *affirmative action as will effectuate the purposes* of the particular subtitle" involved. (Emphasis supplied.)

*Second,* Pelham Wood maintains that paragraph 2 (f) of the Commission's order should be eliminated. Its argument seems to be that paragraph 2 (f) will require Pelham Wood to advertise in more than the daily newspapers which it presently utilizes, thereby causing Pelham Wood to unduly increase its advertising expenses without corresponding benefits. Paragraph 2 (f) of the Commission's order provides in its entirety:

> "(f) The respondent shall immediately initiate a program of tenant recruitment designed to reach minorities, and shall keep a record of all advertising placed by Respondent for two years from receipt of this order. All such advertisement, whether by radio, television, or the press shall have the phrase spoken or printed therein as the case may be, 'Equal

---

where there was in fact an objection to a procedural irregularity at the administrative level but where the administrative record failed to adequately disclose the irregularity or the objection. If, on remand, Pelham Wood wishes to invoke § 255 (f) to show that it did in fact raise a particular procedural question before the agency, then it should be permitted to do so. However, § 255 (f) does not permit the question of the procedural irregularity to be raised for the first time in court.

Housing   Opportunity'   conspicuous   in   the advertisement."

It seems apparent that paragraph 2 (f) does not require any particular increase in advertising, and in fact does not require Pelham Wood to advertise at all. With regard to advertising specifically, the paragraph requires only that a record of all advertising, which Pelham Wood chooses to place, be kept and that each advertisement contain the phrase "Equal Housing Opportunity." Pelham Wood's complaint would appear to have no basis in the language of paragraph 2 (f). However, if the Commission's understanding of the requirements in paragraph 2 (f) is different from ours, this matter can be considered on remand. Or if, at a later date, the Commission requires Pelham Wood to engage in any particular advertising or to increase its advertising, the matter can be considered by a court at that time under the appropriate standards of judicial review.

> *Case remanded without affirmance*
> *or   reversal   pursuant   to   the*
> *provisions of Maryland Rule 871*
> *a   for   further   proceedings   in*
> *accordance with this opinion.*
> *Costs to abide the result.*