527 A.2d 813
**LEVITZ FURNITURE CORPORATION**
v.
**PRINCE GEORGE'S COUNTY, Maryland, et al.**
No. 1468, Sept. Term, 1986.
Court of Special Appeals of Maryland.
July 10, 1987.
Certiorari Denied Dec. 9, 1987.

**104**

Paul B. Lang (Niles, Barton & Wilmer, on the brief), Baltimore, for appellant.

Tonia Y. Belton, Associate Co. Atty. (Larnzell Martin, Jr., Co. Atty. and Michael O. Connaughton, Deputy Co. Atty. on the brief), Upper Marlboro, for appellee, Prince George's County.

Franklin D. Henderson, Forestville, on brief, for appellee, Willie Parks, Jr.

Argued before MOYLAN, BLOOM and WENNER, JJ.

BLOOM, Judge.

The Prince George's County Human Relations Commission (Commission) found that appellant, Levitz Furniture Corporation (Levitz), had been guilty of racial discrimination when it fired a black employee, appellee Willie Parks, Jr. The Commission ordered Levitz to cease and desist from enforcing personnel policies in a racially discriminatory manner and to reinstate Parks with back pay of $48,249.96. When Levitz did not promptly comply with that order, Prince George's County, on behalf of the Commission, and Parks brought an action against Levitz, in the Circuit Court for Prince George's County, to enforce the Commission's order. Levitz then filed in the circuit court a direct appeal from the Commission's order and moved to consolidate the two actions. After granting the motion to consolidate, the court affirmed the Commission, and Levitz noted a timely appeal to this Court. The County and Parks, who had challenged Levitz's right to appeal to the circuit court, filed a cross-appeal to preserve that issue. They have also

moved to dismiss Levitz's appeal, asserting that we have no jurisdiction to entertain it.

For reasons which are set forth below, we shall deny appellees' motion to dismiss, and we shall reverse the judgment of the circuit court.

### Facts

On 26 November 1982, appellee Parks filed a complaint with the Prince George's County Human Relations Commission, alleging that he had been discharged from his employment as a sales associate with Levitz as a result of racial discrimination. Levitz denied the allegation and asserted, in response, that Parks was terminated on the basis of his poor performance on the job. The Commission conducted a two-session public hearing concerning Parks's complaint on 30 July 1984 and 10 September 1984. At the later session, Levitz introduced into evidence Parks's employment file, which indicated that Parks had received numerous oral and written reprimands for various mistakes he had committed over his eleven years of employment with Levitz. Moreover, Parks had repeatedly received performance ratings of "satisfactory-minus" during the twenty-two months preceding his dismissal.

The Commission's Order, together with its Findings of Fact and Conclusions of Law, was issued on 25 April 1985. Inexplicably, the Commission appears to have ignored Levitz's evidence relating to Parks's history of employment in reaching the erroneous conclusion that Levitz had contended that Parks was terminated because of a merchandise pricing error he committed on 12 November 1982.[1] The Commission then found that three white employees had committed similar pricing mistakes at one time or another but were not discharged. In the Commission's view, Levitz did not adequately explain the apparently disparate treatment afforded to Parks.

---

1. The record discloses that the alleged incident actually occurred on 11 November 1982.

Based primarily on those factual determinations, the Commission concluded as a matter of law that Levitz had failed to "articulate any legitimate non-discriminatory reason for terminating Mr. Parks as opposed to the similarly situated white employees"; therefore, it found racial discrimination in the firing of Parks.[2] The Commission ordered Levitz to rehire Parks with back salary and to cease and desist its discriminatory practices.

On 2 August 1985, the County, on behalf of the Commission, joined by Parks, filed their action in equity, pursuant to Prince George's County Code § 2–197 (Supp.1985), seeking to have the circuit court enforce the Commission's order. Two months later, on 4 October 1985, Levitz filed its appeal of the Commission's order. Over the County's objection, the court consolidated Levitz's appeal and appellees' enforcement actions. The court then affirmed the Commission's order.

## Motion to Dismiss

The first matter for consideration is the motion to dismiss Levitz's appeal for want of jurisdiction over the subject matter. It is the appellees' contention that under § 12–302(a) of the Courts and Judicial Proceedings Article, Levitz has no right to appeal to this Court from the judgment of the circuit court in an appeal to it from the Commission. Moreover, the appellees maintain that because Levitz's appeal from the Commission's Order was not timely filed, pursuant to Md.Rule B4, the circuit court lacked jurisdiction to entertain that action. Both of these arguments miss the mark.

---

2. The Commission also found that Parks had not committed the pricing error of which he was accused. Having expressed that finding as one of its "Conclusions of Law," the Commission then stated that this was not significant to the decision because, even if Parks had erred, Levitz had failed to explain to the Commission's satisfaction why Parks was discharged while similarly situated white employees were not.

Section 12–301 of the Courts and Judicial Proceedings Article (1984 Repl.Vol.) provides that a party may appeal a final judgment by the circuit court. That broad grant of authority is somewhat limited by § 12–302(a) which states:

Unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of ... an administrative agency....

Consequently, the county is correct in maintaining that in the absence of any express statutory language permitting Levitz to note an appeal to this Court we are precluded from reviewing the circuit court's exercise of appellate jurisdiction. In the context of this case, however, that point is irrelevant.

■ The court below consolidated the county's enforcement action in equity with Levitz's appeal of the Commission's order. In a concurrent exercise of original jurisdiction and appellate jurisdiction, the court issued a single judgment in the consolidated action. This appeal is from that unitary judgment. Although § 12–302(a) enables Prince George's County to deny its citizens the right to enlist our review of the circuit court's exercise of appellate jurisdiction, that statute does not enable the county to preclude our review of the lower court's exercise of original jurisdiction. Levitz is entitled to appeal the circuit court's judgment because it was rendered in an equity proceeding filed by the appellees in that court. *See* Md.Cts. & Jud. Proc.Code Ann. § 12–301 (1984 Repl.Vol.).

Ordinarily, our identification of the basis upon which this case is properly before us would render it unnecessary for us to consider appellees' contention that the circuit court should have dismissed, as untimely, the appeal filed by Levitz on 4 October 1985. The suggestion is made, however, that under provisions of the Prince George's County Code then in effect the failure to file a timely appeal placed the factual determinations of the Commission beyond judicial review. In responding to that contention, we must

examine the code provisions relied on by appellees and their effect on the timeliness issue.

As of 2 August, 1984, after Parks had filed his complaint but before the Commission rendered its final decision, § 2–197 of the Prince George's County Code, relating to the Human Relations Commission, was amended. Under the prior law, the county, in order to enforce compliance with Commission orders, would file an action in equity in the circuit court. The court, in turn could, and frequently would, hear the matter *de novo*, making its own factual findings as to discrimination. The August 1984 amendment continued to authorize the county to seek enforcement in equity, but also, *inter alia*, (1) permitted any party aggrieved by the Commission's decision to file an appeal in the circuit court, pursuant to subtitle B of the Maryland Rules of Procedure; (2) provided that a "determination of the Human Relations Commission of a violation of this Division shall be a conclusive finding"; and (3) made the provisions of the amendment applicable not only to all future cases but also to all cases then under consideration either by the Commission or by the circuit court.

One reason for the "conclusive finding" provision, of course, was to eliminate the *de novo* trial in the circuit court. Appellees do not contend that in the event of a timely appeal the court could not inquire into the basis for or validity of the Commission's finding; they do assert, however, that by failing to file a timely appeal Levitz waived any right to challenge the validity of the Commission's findings in the equity enforcement action. In that respect, it is suggested, the Commission's finding of a violation is "conclusive."

■ We need not address the argument that failure to appeal constitutes a waiver of all right to challenge the validity of the Commission's finding. Levitz did appeal. True, its appeal was not filed within 30 days of the Commission's order, as required by Md.Rule B4, but appellees are

incorrect in their assertion that Rule B5 mandated dismissal
of the appeal. What Rule B5 specifies is that

> [i]f the appellant shall fail to file his order for appeal
> within the time prescribed by Rule B4 (Time for Filing) or
> any order issued pursuant thereto, or shall fail to file his
> petition within the time prescribed by section e of Rule B2
> (How Appeal Taken), the court shall dismiss the appeal
> *unless cause to the contrary be shown.*

(Emphasis added.) Levitz contended that its counsel was
assured by someone at the office of the Commission that its
June 1982 Handbook contained an up-to-date version of
Prince George's County Code § 2–197. It further averred
that all copies of the code available at the University of
Maryland Law Library, University of Baltimore Law Li-
brary, main branch of the Enoch Pratt Free Library (an
official depository of state documents), Baltimore City Bar
Library, and the law library of the Circuit Court for Prince
George's County contained the same version of § 2–197 as
appeared in the 1982 Handbook, *i.e.,* without the 1984
amendment. The court concluded that lack of actual notice
of the amendment provision for appeal despite diligent
efforts to keep abreast of the local law constituted good
cause for not dismissing the appeal. We see no error or
abuse of discretion in that holding.[3]

Since Levitz appealed the Commission's decision and the
court allowed the late appeal, there was no waiver of the
right to challenge the Commission's findings.

### The Appeal

A. *Scope of Review*

The Prince George's County Code does not identify any
particular standard for reviewing the decisions of the Coun-
ty's Human Relations Commission, thus we shall employ
the general principle that "decisions of an administrative

---

3. Our holding does not necessarily mean that we would have found
error or abuse of discretion had the court dismissed the appeal. The
circuit court judge has wide discretion in these matters.

agency will not be disturbed on appeal unless they are not supported by substantial evidence or are arbitrary, capricious or unreasonable." *Supervisor of Assessments v. Peter & John Radio Fellowship, Inc.,* 274 Md. 353, 355, 335 A.2d 93 (1975). Substantial evidence supports a decision when the record discloses "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bullock v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119 (1978) (quoting *Snowden v. Mayor of Baltimore,* 224 Md. 443, 448, 168 A.2d 390 (1961)). Consequently, the scope of a substantial evidence review is restricted to determining "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Insurance Commissioner v. National Bureau of Casualty Underwriters,* 248 Md. 292, 309–10, 236 A.2d 282 (1967). It is not our function to substitute our judgment for that of the agency with respect to conflicting evidence. *Board of County Commissioners of Prince George's County v. Levitt & Sons, Inc.,* 235 Md. 151, 159–60, 200 A.2d 670 (1964).

Consideration of whether the Commission's order is arbitrary, capricious or unreasonable is similar in scope to that of a substantial evidence review. A decision unsupported by sufficient facts or proper factual inferences is arbitrary, capricious and unreasonable. *Insurance Commissioner v. National Bureau of Casualty Underwriters, supra,* 248 Md. at 300–01, 236 A.2d 282. Furthermore, an administrative action is deemed arbitrary if the agency refuses to consider evidence properly before it. *Heaps v. Cobb,* 185 Md. 372, 378, 45 A.2d 73 (1945). With these principles in mind, we shall examine the Commission's order.

B. *The Commission's Order*

Although not explicitly stated, it appears from the Commission's Findings of Fact and Conclusions of Law that the determination that Levitz had committed unlawful discrimination was based upon the Commission's application of the *prima facie* method of establishing discrimination outlined

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, the complainant has the initial burden to set forth a *prima facie* case of unlawful discrimination. Just how that is done in the context of termination of employment is the subject of some disagreement. *See e.g., Boner v. Board of Commissioners*, 674 F.2d 693, 696 (8th Cir.1982) (plaintiff must show (1) he was a member of a protected class, (2) he was capable of performing the job, and (3) he was discharged); *Rohde v. K.O. Steel Castings, Inc.*, 649 F.2d 317, 322 (5th Cir.1981) (plaintiff need only demonstrate that he was a member of a protected class who was treated differently than similarly placed co-worker who did not belong to the protected group); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013–14 (1st Cir.1979) (plaintiff must prove (1) he was a member of a protected group, (2) his level of job performance met the legitimate expectations of his employer, (3) he was discharged, and (4) the employer sought someone with similar qualifications to perform the same job); *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir.1977) (*prima facie* case is established when (1) plaintiff is member of racial minority, (2) he was qualified for the job, (3) he was satisfying the normal requirements of his work, (4) he was discharged, and (5) white employees were assigned to replace him). Although the various formulations of the *prima facie* case differ in some respects, they share a common nucleus of thought: a *prima facie* case is established when a member of a protected group is discharged under circumstances which, if unexplained, would support an inference that the decision to discharge was "based upon a consideration of impermissible factors." *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978).

Once the complainant establishes a *prima facie* showing of discrimination, a rebuttable presumption of discrimination arises. *McDonnell Douglas, supra*, 411 U.S. at 803, 93 S.Ct. at 1824–25. The onus is then placed upon the employer to rebut that presumption by *articulating* some legit-

imate non-discriminatory reason for terminating the employee. *Cf. Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1980). When the employer provides such an explanation, the burden shifts back to the complainant to prove that the reason given for his dismissal was pretextual. *McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. at 1824–25. That burden merges with the complainant's ultimate burden of showing that the employer intentionally discriminated against him. *Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095. The claimant may "succeed in this directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

■  The parties to this appeal do not dispute the applicability of the *prima facie* method to the case *sub judice*. What is contested is whether there is substantial evidence in the record to support the Commission's conclusion that Levitz did not articulate a non-discriminatory reason for discharging Parks as opposed to "similarly situated" white employees. The Commission's conclusion is unsupported by *any* evidence in the record; it is, therefore, arbitrary, capricious and unreasonable.

From the outset, Levitz maintained that Parks was discharged because of his poor performance on the job. In support of that contention, the company introduced its personnel records pertaining to Parks. Those records disclose that between 1972 and 1979 Parks had received a total of only three warnings, two for merchandise pricing errors and one for abandoning a customer; but in the twenty-five month period from September, 1980 to October, 1982, Parks was given a total of seven warnings for numerous incidents of improper completion of sales documentation, as well as for failures to adhere to company policies concerning instant credit sales and minimum required down payments.

As a result of those problems, the company gave Parks special training at the company's expense. Yet, following that training, the company determined that Parks committed two significant mistakes on 11 November 1982. The company concluded that Parks had sold certain furniture at an unreasonably low price and had also attempted to qualify a customer for instant credit without first determining whether that customer had ever had an account with the company which provided retail financing for Levitz. The latter was regarded as a serious error because, if the customer had had such an account, the retail finance company could have refused to indemnify Levitz for any loss.

Despite the assertion by Levitz that Parks was dismissed on the basis of poor job performance, the Commission's Findings of Fact is devoid of reference to the employment history provided by Levitz. Astonishingly, the Commission found that Levitz had taken the position that Parks was discharged solely because of the 11 November 1982 pricing incident. That finding, being directly contrary to the evidence before the Commission, is arbitrary. *Cf. Heaps v. Cobb, supra,* 185 Md. at 378, 45 A.2d 73.

After erroneously concluding that Parks was terminated as a result of a single pricing error, the Commission identified Ralph Johnson, Ray Sutton and Lisa Curtis as three white employees who had made pricing errors. On that basis, the Commission concluded that the treatment of Parks should be compared with the treatment afforded Johnson, Sutton and Curtis. With respect to Johnson, there is absolutely no evidence in the record that he had ever committed a pricing error. The only testimony concerning Johnson was that of a fellow employee who expressed his belief that Johnson's low sales performance was tolerated while Parks's was not.[4] That opinion is totally irrelevant,

---

4. Also mentioned in the record is an employee named Ed Johnson. There is some confusion in appellant's brief as to whether Ed Johnson and Ralph Johnson are one and the same. In any event, the testimony concerning Ed Johnson was to the effect that he is an exemplary

because Levitz never claimed that Parks was terminated on the basis of low sales production. Consequently, the finding that Johnson and Parks were similarly situated was arbitrary.

The only evidence in the record concerning Roy Sutton, a sales associate with Levitz, consisted of (1) hearsay testimony to the effect that on some unidentified occasion Sutton had committed a pricing error of an undisclosed amount and (2) direct testimony that Sutton's personnel file indicated he had been employed as long as Parks but had received only three warnings during that period. Such scant testimony could not lead a reasoning mind to conclude that Sutton's situation was similar to that of Parks. Accordingly, the Commission's finding concerning Sutton is unsupported by substantial evidence in the record.

Finally the record discloses that Lisa Curtis was temporarily assigned to merchandising as a part of her training to become a buyer. While in merchandising she wrote down the wrong price on a sales tag, thus committing an error comparable in dollars to that allegedly committed by Parks on 11 November 1982. The Commission's finding that trainee-Curtis and eleven-year-employee-Parks were similarly situated is simply ludicrous.[5]

Our determination that the factual findings heretofore discussed are arbitrary and unsupported by substantial evidence leaves the Commission's legal conclusion that Levitz failed to articulate a non-discriminatory reason for terminating Parks without a factual predicate. As a conse-

---

employee who repeatedly earns satisfactory and satisfactory-plus performance ratings.

**5.** The Commission found as a matter of fact that Levitz had taken the position that Curtis was not discharged for her pricing error because she is the daughter of an important business associate of the company. Even if that finding had any factual support in the record (which it does not), such explanation for treating Ms. Curtis's error more leniently than Parks's mistake would be utterly inconsistent with the concept of racial discrimination as the basis for firing Parks but not Curtis.

quence, that legal conclusion is arbitrary. Appellees, however, seek to bolster the Commission's conclusion on the basis that Levitz had the duty to substantiate its explanation for discharging Parks by producing data to the effect that employees retained did not have similarly poor work records. Without such data, appellees assert, Levitz failed in its obligation to articulate a legally non-discriminatory reason for discharging Parks. That argument is blatantly contrary to the teachings of *Texas Department of Community Affairs v. Burdine, supra.*

The Supreme Court in *Burdine* stated that the employer has no responsibility to prove the genuineness of his explanation for the challenged action. *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. The employer need only set forth an explanation through admissible evidence. *Id.* at 255, 101 S.Ct. at 1094. Once the explanation is proffered, the claimant has the burden to prove pretext and that can be done through the claimant's introduction of comparative data acquired through discovery from the employer. In the words of the *Burdine* Court: *"McDonnell Douglas* teaches that it is the *plaintiff's* task to demonstrate that similarly situated employees were not treated equally." *Id.* at 258, 101 S.Ct. at 1096 (emphasis added).

The Commission deemed it unnecessary to consider the issue of pretextuality, having found the *prima facie* case of discrimination unrebutted. Although identified as arguments for concluding that Levitz had failed to provide a legally sufficient reason for terminating Parks, appellees present two contentions that address the issue of pretextuality. We reject out of hand the preposterous argument that if Parks was really terminated for his poor performance he would have been fired long before November, 1982. We shall give more serious consideration to appellees' argument that the Commission's finding that Parks did not commit the 11 November 1982 pricing error is equivalent to a finding of discrimination.

The finding that Parks was innocent of the November 1982 pricing mistake was based upon the Commission's

assessment of the credibility of Parks as a witness and the inferences that can be derived from conflicting evidence. With respect to that finding, we will not substitute our judgment for that of the Commission. *Bullock v. Pelham Wood Apartments, supra,* 283 Md. at 512, 390 A.2d 1119. That finding, being supported by substantial evidence, is binding on us. It does not necessarily or logically follow, however, that Levitz committed unlawful discrimination.

Employers can make mistakes in assessing fault for violations of company policy without being guilty of invidious discrimination. "The law is clear that an employer's reason for his action may be a good reason, a bad reason, a mistaken reason, or no reason at all as long as the decision was not based on race and/or sex or other unlawful discriminatory criteria." *Grier v. Casey,* 643 F.Supp. 298, 308 (W.D.N.C.1986). The trier of fact need only determine that the employer had a good faith belief that the employee's performance was unsatisfactory. *Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982); *Grier v. Casey, supra,* 643 F.Supp. at 309.

The Commission made no finding concerning Levitz's good faith or lack thereof concerning Parks's responsibility for the 1982 pricing error, in particular, or his unsatisfactory work performance in general. Since our review of the record convinces us that it contains no evidence that would support a finding of bad faith, only one conclusion can reasonably be drawn: Parks utterly failed to meet his burden of proving racial discrimination by a preponderance of the evidence.

Human Relations Commissions serve an important function in our society. They exist to insure that workers are not denied the benefits of employment on the basis of race, sex, age or other unlawful criteria. They do not exist, however, to redress wrongs that may befall a member of a protected minority for reasons unrelated to his or her minority status. When an administrative agency, such as the Prince George's County Human Relations Commission,

loses sight of its proper function, the integrity of all mechanisms for protecting civil rights is compromised.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.