735 A.2d 1122

Oscar MORA

v.

STATE of Maryland.

No. 3, Sept. Term, 1999.

Court of Appeals of Maryland.

Aug. 27, 1999.

Michael R. Malloy, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Regina Hollins Lewis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (retired, specially assigned), JJ.

WILNER, Judge.

A jury in the Circuit Court for Anne Arundel County convicted petitioner Mora of maintaining a common nuisance, in violation of Maryland Code, Article 27, § 286(a)(5). The conviction was based on evidence, the sufficiency of which is not challenged, that, between 1988 and 1997, Mora maintained a "compound" at 8200 West Baltimore–Annapolis Road that was (1) resorted to by drug abusers for the purpose of illegally administering controlled dangerous substances, and (2) used for the illegal manufacture, distribution, dispensing, storage, or concealment of such substances.[1] Any place maintained for either purpose constitutes a common nuisance under § 286(a)(5).

The county police department had been investigating Mora and his compound since 1988 and, on at least six and possibly eight, prior occasions, including in August, 1995 and in September and November, 1996, had obtained and executed search warrants for the compound and, based on evidence obtained in those searches, filed charges in the district court against Mora. For whatever reason, the State then declined to prosecute those charges. Upon the dismissal of the 1995 and 1996 charges, Mora proceeded, under Article 27, §§ 735—741, to obtain orders from the district court expunging court and police records pertaining to those charges. The single issue presented to us is whether the State was precluded from using information or evidence allegedly covered by those expungement orders in the prosecution of this case. The Court of Special Appeals, in affirming the judgment of the circuit court, addressed that issue and held that the information and evidence was not precluded. *Mora v. State,* 123 Md.App. 699,

---

1. Although the property itself was apparently owned by Mora's father-in-law, the evidence sufficed to establish that the compound was effectively under the control of Mora and his wife.

720 A.2d 934 (1998). We shall affirm the judgment for other reasons.

## BACKGROUND

The law governing the expungement of criminal records is set forth in Article 27, §§ 735–741 and Maryland Rules 4–501—4–512. Two situations are provided for—when a person is arrested or otherwise detained but not formally charged, and when a person is formally charged but, for any of the reasons enumerated in § 737, is not convicted or, if convicted, is pardoned. Section 736 deals with the first situation and provides, in relevant part, that if a person is arrested, detained, or confined for the violation of any criminal law, other than a motor vehicle or traffic law, and is released without being charged, the person is entitled to have the police records concerning the arrest, detention, or confinement expunged. It sets forth a procedure for requesting the expungement, an investigation by the affected law enforcement agencies, and a court order of expungement.

Section 737 deals with the second situation. In relevant part, it provides that if a person is charged with the commission of a crime and the charge is dismissed or nol prossed, the person may file a petition in the court in which the proceeding was commenced or to which the proceeding was transferred or appealed to have all records pertaining to the charge that are maintained by the State or any of its subdivisions expunged. A petition may not be filed within three years after the dismissal or nol pros unless the petitioner executes a general waiver and release of all claims the petitioner may have against any person for tortious conduct arising from the charge. A copy of the petition must be served on the State's Attorney. Unless the State's Attorney, within 30 days after service, files an objection, the court must enter an order requiring the expungement "of police records and court records pertaining to the charge." § 737(i). If an objection is filed, the court must conduct a hearing and determine whether the person is entitled to expungement.

Section 735 defines the pertinent terms—court records, police records, and expungement. With exceptions not relevant here, "court records" means "all official records maintained by [court personnel] pertaining to a criminal proceeding," including indices, docket entries, charging documents, pleadings, memoranda, transcriptions of proceedings, electronic recordings, orders, judgments, and decrees. § 735(b). Section 735(e) defines "police records" to mean "all official records maintained by a law enforcement agency [or the Criminal Justice Information System Central Repository] pertaining to the arrest and detention of or further proceeding against a person on a criminal charge or for a suspected violation of a criminal law." The term does not include, however, "investigatory files, police work-product records used solely for police investigation purposes," or records pertaining to certain motor vehicle or traffic offenses. Finally, for our purposes, § 735(c) defines "expungement" to mean "the effective removal of these records from public inspection" by obliteration, removal to a separate secure area "to which the public and other persons having no legitimate reason for being there are denied access," or, if effective access to a record can be obtained only by reference to other records, by the expungement of the other records, or part thereof providing the access.

The section most at issue here is § 739, which, in relevant part, makes it unlawful for any person "having or acquiring access to an expunged record to open or review it or disclose to another person any information from it without an order from the court which ordered the record expunged. . . ." Ordinarily, a court may not enter such an order without notice to the person to whom the record pertains and a hearing, but, upon a verified petition by the State's Attorney alleging that the record is needed by a law enforcement agency for purposes of a pending criminal investigation and that the investigation will be jeopardized or that life or property will be endangered without immediate access to the record, the court may enter an *ex parte* order permitting access. Section 739(d) makes a violation of § 739 a misdemeanor and subjects the violator to imprisonment and a fine and, if the violator is a

State or local government employee, to dismissal for misconduct in office.

The expungement issue first arose in this case after the State, in response to a discovery request, advised that it would be using at trial evidence seized pursuant to the execution of search warrants in July, 1988, December, 1991, May, 1992, May, 1993, May, 1995, August, 1995, September, 1996, and November, 1996. Copies of those warrants, along with the applications and returns pertaining to them, were supplied to Mora. The State also informed Mora that members of the county police department had conducted surveillance of the compound on 18 dates in 1995, which were disclosed. Mora thereupon moved to dismiss the indictment on the ground that "these records," which were not described in the motion, "were the subject of appropriate expungement orders arising out of charges being placed against this Defendant during the period of time he has been charged with having committed offenses and as set forth in the indictment in this case." The motion did not describe the expungement orders; nor were they attached to the motion. In a subsequent memorandum filed in support of the motion, Mora seemed to assume that all evidence from 1988 onward pertaining to him and to the compound had been expunged and that "[s]ince the material divulged in discovery by the State was used in the expunged cases there should be no evidence to be presented during the period charged in the Indictment."

At a hearing on the motion, Mora claimed that the warrants, affidavits, returns, and other documents supplied to him in discovery were covered by the three expungement orders, at least one of which he gave to the court, but none of which are in the record before us. His initial point was that, by supplying the expunged documents *to him* in discovery, the State violated the expungement orders and, for that reason, the indictment should be dismissed. The State responded that none of the documents supplied were court records and that, to the extent they were police records, they constituted investigatory and police work-product records and were therefore not included within the expungement orders. The State also

urged that, if the disclosure of those documents to the defendant in discovery amounted to a violation of an expungement order, the violation was insignificant and was hardly a basis for dismissing the indictment. The court denied the motion, as argued, on three grounds: (1) the documents in question were investigatory records not subject to expungement; (2) the expungement orders were from the district court and any effort to enforce them had to be in that court; and (3) turning records over to the defendant in discovery did not constitute a violation of the orders.

Mora then asserted the argument made in his written motion, that the only evidence that the State had consisted of the expunged material and, for *that* reason, the indictment should be dismissed. The State again urged that the documents in question were not expunged. The court confirmed its ruling denying the motion. It concluded that, to the extent that the warrant documents were in the possession of the court and were therefore court records, they were under seal, and the court ordered that they remain so pending trial. They could be produced at trial, under seal, subject to further order of the court at that time. The court added that, to the extent that the police had copies of those documents, they constituted investigative records.

The motion to dismiss was followed by a motion *in limine* to exclude from evidence any records that were expunged by order of the district court. That motion, argued on the morning of trial, was denied. The court ruled that the State could not use the Statements of Charges that were apparently included within the expungement orders but could use the warrant documents. In fact, although some of the police witnesses referred to some of the warrant documents in their testimony, none of the warrants, applications, returns, or Statements of Charges pertaining to any of the prior cases were admitted into evidence. The documents pertaining to the 1993, 1995, and 1996 warrants were marked for identification but were not admitted.

The case against Mora consisted principally of the testimony of persons who actually sold cocaine for Mora at the compound and of police officers who had been involved in investigating the activities at the compound. Antionette Romano said that she sold cocaine for Mora at the gate of the compound for about a year. She sometimes stayed in the compound and had seen Mora cooking crack cocaine and bagging it. Angela Dorsey, Romano's sister, purchased cocaine at the gate of the compound during 1995 and 1996. James Wiley gave similar testimony. He worked at the gate selling cocaine and had seen Mora cooking the substance. All three witnesses described the operation—that customers would pull up to the gate, give the gate-keeper $20 and receive cocaine in return. The gate-keeper obtained his or her supply from Mora inside the compound. Mora compensated the gate-keepers by giving them pieces of cocaine, some of which they used, some of which they sold.

The first officer to testify was Sergeant McAndrew. Referring to the application for the *1993* search warrant, which had been issued by the district court but had not been the direct subject of any expungement order, he stated that, in April, 1993, he effected a controlled buy of cocaine from the compound through the use of an unwitting intermediary and, based at least in part on that, he obtained a search warrant for the compound. Before executing the warrant on May 16, he effected two more controlled buys, one of which occurred just before he entered the property under the warrant. In executing the warrant, he found on Mora $1,440, the serial numbers of which matched the numbers of the bills he had earlier given to the intermediary. Despite the presence of a K–9 dog, the police were unable to locate any drugs on the property, although McAndrew said that there were a number of other animals on the property and that a drug detection dog will often not conduct a thorough search because of the presence of other animals.

Sergeant McCullen testified that, in April, 1994, he intercepted two persons at the Amtrack station in Linthicum and, in a consensual search of their bags, discovered $9,860 in cash

in a brown paper bag and a card containing Mora's name and address. Detective McLaughlin recounted a controlled buy he made in February, 1995, leading to a surveillance of the compound that commenced in March and extended through July. The surveillance was in the evening, usually for about two hours, and Detective McLaughlin noted that anywhere from 10 to 28 vehicles would enter and leave the driveway during that time, most of them staying only a brief period of time and some of them returning more than once. Those observations led him to believe that there was drug trafficking occurring, and he obtained a search warrant from a judge of the circuit court, which was executed in August, 1995. Reading from the return, which itself was not admitted into evidence, Detective McLaughlin described the items recovered from the kitchen, which led him to conclude that Mora had been cooking cocaine.

Detectives Gunn and Russell described a controlled buy they effected in September, 1996, which led to the issuance and execution of the September 26 search warrant, also obtained from a judge of the circuit court. Detective Russell stated that, in executing the warrant, he arrested three people, including Angela Dorsey and James Wiley, and found narcotics paraphernalia. He also testified about further surveillance and another controlled buy in November, 1996, leading to the November 16 warrant, obtained from a judge of the circuit court. Referring to the return on that warrant, which was not itself admitted into evidence, Detective Russell described the items seized, which were indicative of a cocaine manufacturing and distribution operation. Officer Mangold, who participated in both the controlled buy and the search, testified that she recovered from Mora's pocket $40 that she had earlier that day given to the intermediary to purchase cocaine.

## DISCUSSION

The complaint before us raises a host of issues but arises from a record that is wholly inadequate for us to determine whether those issues are really presented. Mora

asserts in his brief that (1) the expungement orders issued by the district court in 1995 and 1996 "covered the search and seizure affidavits, warrants, returns and all evidence gathered during the searches," and "[t]hus, a prosecution based on such evidence had to be dismissed," and (2) the court "erred by refusing to exclude from evidence at Petitioner's trial all the evidence and records that had arisen from or been part of the three District Court cases in which the expungement orders had been granted." The most significant problem with those assertions is that the expungement orders on which they are based are not in the record.

Although the State has conceded that expungement orders were entered by the district court with respect to the 1995 and 1996 prosecutions, there is no evidence in this record of what or who was included within them. We note that the version of Maryland Rules 4–508 and 4–508.2 that were in effect in 1995 and 1996 provided a form of expungement order that would have directed "the following named custodians of police records and the Central Repository" to expunge "the record pertaining to petitioner's arrest, detention, or confinement and comply with the provisions of Section 736(c) of Article 27," and have further directed that "the following-named custodians of court records in this action or proceeding shall expunge all court records in their custody." Without the actual orders, of course, or some other reliable evidence of their content, there is no way to tell which custodians were named. Although we may properly assume that an expungement order entered by the district court in conformance with Rules 4–508 and 4–508.2 would direct the expungement of records in the custody of the county police department and the clerk of the district court, in which the Statement of Charges was filed, it is not at all clear that the order would have directed the expungement of records in the custody of the clerk of the circuit court, in which no criminal proceedings had been brought. This is important—indeed critical—because the 1995 and 1996 warrants in question were issued by, returned to, and ultimately subpoenaed from the circuit court. If the expungement orders did not name the clerk of the circuit court and were not served on

that clerk, those records would not have been legally and effectively expunged and would not, therefore, have been inadmissible on the ground of expungement. Section 737($l$) requires every custodian of police or court records subject to an expungement order to advise the court and the person in writing of compliance with that order. There is nothing in this record to indicate that either the clerk of the circuit court (or, indeed, the custodian of the county police records) ever notified the district court or Mora of compliance.

The issues raised by Mora arise only if we assume that the expungement orders issued by the district court specifically named and were served upon the clerk of the Circuit Court for Anne Arundel County. Only with that assumption and the further assumption that the expungement orders sufficed substantively to cover the application, search warrant, and return would the questions arise whether (1) the statute permits the district court to order the expungement of records maintained by a circuit court,[2] (2) such an order by the district court could

---

2.  This issue was raised by the judge handling the pre-trial motions, but it has not been addressed by either Mora or the State, and the answer is not entirely clear. The 1975 law that enacted the expungement statute was preceded by an expungement bill passed in 1974 (1974 H.B. 122) that was vetoed by the Governor because of problems perceived with its implementation. *See* 1974 Md. Laws at 3090. The 1974 bill provided, in proposed § 729(a), that, in any case in which a person was charged with a criminal or juvenile offense and the court granted a judgment of acquittal or the case was dismissed or the person found not guilty, "the court shall order *the clerk of the court* " (emphasis added) to expunge all pertinent records. Under that formulation, the expungement order would likely have applied only to the clerk of the court that entered the order. In conformance with the commitment made by the Governor in his veto message on H.B. 122, the Governor sent to the Legislature a revised expungement bill in 1975 that was introduced as an Administration Bill and that was accompanied by a memorandum explaining how that bill resolved some of the problems noted with the 1974 bill. One of the issues addressed in the memorandum from the Governor's Office was the problem of records existing in more than one court, at least when a case had been transferred from one court to another or appealed to a higher court. The recommendation was made, and accepted by the Legislature through § 737(c), that the petition for expungement should be filed in the highest court having records, which could, if it chose, remand the matter to the court of original jurisdiction. The memorandum noted the alternative of filing the petition in

preclude the production of those records in circuit court pursuant to a circuit court subpoena, (3) expungement of the records would preclude witnesses having independent knowledge of the information contained in those records from testifying based on that independent knowledge, (4) the fact that warrant documents constitute "court records" when in the custody of the clerk necessarily makes copies of those records in the possession of a police agency "police records," rather than parts of investigatory files or police work-product, (5) an expungement order issued with respect to a particular arrest or prosecution effectively expunges records relating principally to another, earlier arrest or prosecution on the premise that those records, or information from those records, were used as a basis for the instant arrest or prosecution, and (6) the prohibition in § 739 against reviewing and disclosing expunged records carries with it the tacit sanction of making that information inadmissible in court.

■ These are important issues, some of which have not been specifically addressed by the parties, but they should not be decided in a vacuum, in the context of an advisory opinion, or upon sheer speculation as to whether they are even presented in the case. Counsel apparently had a copy of at least one of the orders, for he gave it to the judge at the pre-trial motion hearing, but it never got into the record, and we have no idea of its contents. Nor did Mora produce any evidence showing that the expungement order was ever served on the clerk of the circuit court. It is not at all clear from this record whether, or to what extent, any of the police officers who testified recounted information obtained solely from expunged records. The only suspect records produced or referred to in

the lower court and allowing the order of that court "to bind the appellate court as to its records," but pointed out that, though perhaps an expedient approach, "the authority of a lower court to bind a higher one especially as to its own records, is not a desirable goal." In light of this history, it is indeed questionable whether the Legislature intended to permit an order of the district court to affect records maintained by the circuit court. Certainly, it is an issue that is laced with Constitutional considerations and should not be resolved without full briefing and argument, which has not occurred in this case.

court came from the warrant documents maintained by the clerk of the circuit court. It is incumbent upon the appellant claiming error to produce a sufficient factual record for the appellate court to determine whether error was committed, and he has not done that in this case. The Court of Special Appeals never should have addressed the expungement issue, and we shall regard its pronouncements on that issue as mere *dicta*, having no precedential value. Because there were other issues raised by Mora in the Court of Special Appeals that were not included in his petition for *certiorari* and are therefore not before us, we shall affirm the judgment of that court without expressing any further opinion on its handling of the expungement issue.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.