752 A.2d 1238

**Murray D. GIGEOUS**

v.

**EASTERN CORRECTIONAL INSTITUTION.**

**No. 1549, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 7, 2000.

John F. Conwell (Davis & Associates Law Offices, P.A., on the brief), Towson, for Appellant.

Alan D. Eason, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Argued before WENNER, DAVIS and EYLER, JJ.

DAVIS, Judge.

In February 1992, appellant Murray D. Gigeous was employed by appellee Maryland Department of Public Safety and Correctional Services (DPSCS), Division of Correction (DOC), as a correctional officer assigned to the Eastern Correctional Institution. On the evening of February 28, 1992, appellant was arrested and charged in Anne Arundel County with possession of a controlled dangerous substance while off duty. On March 2, 1992, appellee suspended appellant without pay, pending charges for removal, which were filed on March 9, 1992. Subsequently, on October 8, 1992, the charges pending against appellant for his arrest in February were *nol prossed* by the Anne Arundel County State's Attorney. Appellant filed for and received an order of expungement for his arrest and prosecution, pursuant to Md.Code (1996 Repl.Vol., 1999 Supp.), Art. 27, § 737, from the District Court for Anne Arundel County. Meanwhile, on February 9, 1993, he appealed the charges for removal filed against him by appellee.

An administrative hearing was held, at which time appellant moved to have the charges dismissed based on the *nol prose-qui* received from Anne Arundel County, and additionally

moved to exclude any evidence from police, court or agency documentation, and testimony relating to appellant's arrest and prosecution, because they were expunged. The hearing was continued and both parties were to submit memoranda on the use of expunged records. The administrative law judge (ALJ) originally assigned to the case became incapacitated and ALJ Fowler was assigned. On March 26, 1993, appellant's motion to dismiss was denied and appellant lodged a continuing objection as to the introduction of documentary evidence and testimony of the two arresting officers concerning appellant's arrest, which appellee indicated it would introduce. A hearing was held on April 27, 1993, at which time both arresting officers from Anne Arundel County testified and records concerning the arrest were admitted into evidence. The ALJ issued a proposed opinion affirming appellant's dismissal, which was appealed to the Secretary of Personnel (Secretary), who, in turn, affirmed the decision of the ALJ. Appellant then filed a timely appeal to the Circuit Court for Somerset County. The court remanded the case, finding that, to the extent the officers' testimony was based on expunged records, it was inadmissible (Long, J.). On March 7, 1995, a *de novo* administrative hearing was held (ALJ McCloud) where the officers again testified, and the ALJ upheld appellant's dismissal. The Secretary again upheld the termination; appellant filed another appeal with the circuit court. On December 5, 1996, the circuit court remanded the case for a second time in order to determine whether the officers' testimony was based on inadmissible expunged records. Appellant's dismissal was again upheld on the second remand (ALJ Seaton). An appeal was filed with the circuit court.[1] Appellant's termination was upheld on that appeal.

Appellant now presents the following questions, which we rephrase:

---

1. Appellant originally filed his third appeal with the Circuit Court for Washington County where he resided at the time, but it was later transferred to the Circuit Court for Somerset County.

I. Did the ALJ err in denying appellant the opportunity to present testimony from additional witnesses?

II. Did the ALJ err in denying appellant the opportunity to review ALJ McCloud's personnel file for purposes of revealing a conflict of interest?

## FACTUAL BACKGROUND

Appellant was employed as a Correctional Officer III (Sergeant) with the DPSCS at the Eastern Shore Correctional Institution. On February 28, 1992, when appellant was off duty, he was arrested by Anne Arundel County Police for possession of marijuana—a controlled dangerous substance. On March 2, 1992, appellant notified his supervisors of the arrest and, consequently, appellant was placed on suspension without pay. The DOC, a division of DPSCS, filed charges against appellant to discharge him. Meanwhile, the Anne Arundel County State's Attorney entered a *nolle prosequi* for the possession charges. On December 22, 1992, pursuant to appellant's application to the District Court for Anne Arundel County, the court ordered the expungement of all records from the Anne Arundel County Police and the District Court of Maryland pertaining to the incident of February 28, 1992. Thereafter, and following a denial to dismiss the charges based on the *nolle prosequi*, an administrative hearing concerning the charges filed by appellee proceeded, at which time both arresting officers from Anne Arundel County and documents concerning the arrest were admitted into evidence over appellant's objection that the records were expunged. Appellant was discharged and an appeal was filed in the circuit court. The court found that the expunged records were inadmissible and the case was remanded for a determination by the ALJ as to what extent the use of inadmissible expunged records were relied upon to make the decision to terminate appellant. Another hearing was held and the police officers again testified, but no documents involving the arrest were admitted. The ALJ once again issued a proposed opinion to dismiss appellant, which appellee upheld. A second appeal was filed in the circuit court and, again, the case was

remanded for a determination as to whether the officers' testimony was based on expunged records. The third decision of the ALJ upheld the dismissal of appellant and, on the third appeal to the circuit court, the dismissal was affirmed. Appellant then filed this timely appeal. Additional facts will be set forth as they become relevant to our discussion.

## DISCUSSION

### Scope of Review

We review an administrative agency's decision under the same standard as the circuit court. Our primary goal is to determine whether the agency's decision is " 'in accordance with the law or whether it is arbitrary, illegal, and capricious.' " *Curry v. Department of Public Safety and Correctional Servs.*, 102 Md.App. 620, 626–27, 651 A.2d 390 (1994), *cert. granted*, 338 Md. 252, 657 A.2d 1182 (1995), *cert. dismissed*, 340 Md. 175, 665 A.2d 1038 (1995) (quoting *Moseman v. County Council of Prince George's County*, 99 Md.App. 258, 262, 636 A.2d 499 (1994)). The agency's fact-finding and application of the law to the facts will be upheld, as long as it is supported by substantial evidence. *Id.* at 627, 651 A.2d 390. Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion....' " *Anderson v. Department of Public Safety and Correctional Servs.*, 330 Md. 187, 213, 623 A.2d 198 (1993) (quoting *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512, 390 A.2d 1119 (1978)). The proper approach for determining whether there is substantial evidence is if a reasoning mind could reasonably have come to the factual conclusion that the agency reached. *Id.* When deciding issues of law, however, our review is expansive, and we may substitute our judgment for that of the agency if there are erroneous conclusions of law. *Curry*, 102 Md.App. at 627, 651 A.2d 390.

## I

Appellant's primary issue, although notably absent from his questions presented to us, but argued in his brief, is the

propriety of the agency to consider expunged material in making its decision, and to what extent a police officer's investigatory file continues to contain material that has been expunged from police and court records. Despite appellant's failure to frame the question in a manner that places this issue squarely before us, his argument raises the issue, albeit obliquely. We shall, therefore, address this question which has not been squarely decided in Maryland.

At the first administrative hearing, laboratory results were admitted that indicated the substance recovered from the vehicle in which appellant was observed at the time of the arrest was marijuana. Additionally, the two Anne Arundel County Police Officers, who testified at the hearing, referred to the arrest report and other documentation in their file throughout their testimony. After appealing the decision to terminate appellant to the circuit court, the case was remanded to the agency with the finding that the reliance on expunged records was inadmissible.

For reasons articulated, *infra*, we agree with the circuit court's finding. During the second administrative hearing, no documents pertaining to the arrest were admitted, but the officers once again testified. On a second appeal to the circuit court, the case was remanded again for the agency to determine to what extent the officers' testimony was based on expunged material and, therefore inadmissible because it would be an improper basis for the agency's decision. Appellant's position is that the officers, although relying on their investigative file, were not permitted to disclose that information during the administrative hearing and, therefore, their testimony concerning the arrest was inadmissible.

We first observe that the question concerning admissibility is a question of law and, consequently, we are not required to defer to the agency's decision; however, the determination by the agency that the officers' testimony was not based on inadmissible evidence, i.e., expunged records, is a matter of the agency's fact-finding process, which is subject, on appellate review, to the standard of the existence, *vel non,* of

substantial evidence and to the clearly erroneous standard. We will discuss each *seriatum.*

## A

### Expunged Records

There is no dispute that appellant had the record of his arrest in February 1992 properly and officially expunged. Maryland Code (1996 Repl.Vol.) art. 27, § 737(a) and (d), which governs expungement of records, provides:

(a) A person charged with the commission of a crime, including a violation of the Transportation Article for which a term of imprisonment may be imposed, may file a petition setting forth the relevant facts and requesting expungement of the police records, court records, and other records maintained by the State of Maryland and its subdivisions, pertaining to the charge if:

(1) The person is acquitted;

(2) The charge is otherwise dismissed or quashed;

(3) Except if charged with a violation of § 21–902 of the Transportation Article, a judgment of probation before judgment is entered;

(4) A *nolle prosequi* is entered;

(5) The proceeding is placed on the stet docket;

(6) The case is compromised pursuant to § 766 of this article;

(7) The person is convicted of only one criminal act, which is not a crime of violence, and is subsequently granted a full and unconditional pardon by the Governor; or

(8) The charge was transferred to juvenile court jurisdiction under § 594A of this article.

. . .

(d)(1) Except as provided in paragraph (2) of this subsection, a petition for expungement based on the following dispositions may not be filed earlier than 3 years after the date of the disposition:

(i)  An acquittal;

(ii)  A *nolle prosequi;*  or

(iii)  A dismissal or quashing of a charge.

(2)  A petition for expungement based on the dispositions described in paragraph (1) of this subsection may be filed earlier than 3 years after the date of the disposition if the person files with the petition a written general waiver and release, in proper legal form, of all claims the person may have against any person for tortious conduct arising from the charge.

The statute provides further that a copy of the petition for expungement shall be served on the State's Attorney, who may file an objection to the petition.  If no objection is filed, the court must enter the order "requiring the expungement of police records and court records pertaining to the charge." Art. 27, § 737(i).

The statute defines expungement as:

"Expungement," with respect to court records or police records, means the effective removal of these records from public inspection:

(1)  By obliteration;

(2)  By removal to a separate secure area to which the public and others having no legitimate reason for being there are denied access;  or

(3)  If effective access to a record can be obtained only by reference to other records, by the expungement of the other records, or the part of them providing the access.

Art. 27, § 735(c).

Appellant claims that a crucial question in this case is whether Officer Teare, who specifically referred to his "investigative file" during his testimony, is permitted to maintain such a file, and if his disclosure of the contents of the file in the context of an administrative hearing is a violation of the expungement statute.  It is beyond cavil that officers are permitted to maintain investigative files.  Article 27, § 735(e) explicitly defines police records:

. . .

■ (e)(1) "Police records" means all official records maintained by a law enforcement agency, a booking facility, or the Central Repository pertaining to the arrest and detention of or further proceeding against an individual for:

(i) a criminal charge;

(ii) a suspected violation of a criminal law; or

(iii) A violation of the Transportation Article for which a term of imprisonment may be imposed.

(2) "Police records" *does not include:*

(i) *Investigatory files;*

(ii) Police work-product records used solely for police investigation purposes; or

(iii) Records pertaining to nonincarcerable violations of the vehicle laws of the State or of any other traffic law, ordinance, or regulation.

(Emphasis added.) Because the general assembly expressly excluded such files from expungement, we glean an intent that police are permitted to maintain investigative files. It was proper, therefore, for Officer Teare to keep such a file. The threshold issue presented is to what extent that investigative file is subject to disclosure under the expungement statute.

We addressed this very issue in *Mora v. State,* 123 Md.App. 699, 720 A.2d 934 (1998), *aff'd on other grounds,* 355 Md. 639, 735 A.2d 1122 (1999), and held that the exclusions contained in the statute mean that

> police cannot maintain or utilize expunged records for purposes other than law enforcement, such as to interfere with or reduce the prospect that an individual who was the subject of such records might gain future employment, educational opportunities, or other advancement in society.

*Id.* at 717, 720 A.2d 934. We affirmed the circuit court's admission of the evidence because, under the facts of that case, the records concerned an ongoing criminal investigation. In reviewing our decision in *Mora,* however, the Court of Appeals, while affirming that the evidence contained in the

police investigative files was admissible, pronounced our holding as *dicta*, explaining that the record in that case was not sufficient to determine the scope of the expungement because the record did not contain the expungement order. *Mora v. State*, 355 Md. 639, 647–48, 735 A.2d 1122 (1999). The Court stated:

> It is not at all clear from this record whether, or to what extent, any of the police officers who testified recounted information obtained solely from expunged records. The only suspect records produced or referred to in court came from the warrant documents maintained by the clerk of the circuit court. It is incumbent upon the appellant claiming error to produce a sufficient factual record for the appellate court to determine whether error was committed, and he has not done that in this case. The Court of Special Appeals never should have addressed the expungement issue, and we shall regard its pronouncements on that issue as mere *dicta*, having no precedential value.

*Id.* at 649–50, 735 A.2d 1122.

We do not regard the Court's comments as a disapproval of the language or reasoning we used in *Mora*, but rather a finding that our reasoning could not properly be applied to the facts of that case, based on the record before us. Thus, the overall reasoning we applied in *Mora* was sound. Additionally, we note that the Court of Appeals determined that the record in *Mora* was insufficient because the record did not include the expungement order and, as a result, it was impossible to tell which records from which agencies were ordered to be expunged. *Id.* at 647, 735 A.2d 1122. In the case *sub judice*, the order from the district court is included in the record and names the custodians of records for the District Court of Maryland and the Anne Arundel County Police to expunge the records relating to appellant's arrest. Consequently, we are able to determine from the order what records were ordered expunged and what agencies were covered by the order.

■ Our determination as to what extent the limitation of expunged records applies to police investigatory files requires that we examine the meaning and purpose of the expungement statute and its limitations. In doing so, we are confined to the plain and ordinary meaning of the language of the statute, as long as it is not ambiguous. *Curry,* 102 Md.App. at 628, 651 A.2d 390. We observed in *Mora* that the legislature appears to have promulgated the expungement statutes in response to *Doe v. Wheaton Police Dept.,* 273 Md. 262, 329 A.2d 35 (1974). There is no legislative history to this statute, enacted in 1975, that sheds light on this particular issue. *Mora,* 123 Md.App. at 710, 720 A.2d 934.

In *Doe,* the defendant had been charged with committing an unnatural and perverted sexual act; the charge was subsequently *nol prossed.* He proceeded to petition the court for an order of expungement for all records relating to the arrest. Appellees demurred, asserting that destruction of such records was contrary to public policy and that, absent some statutory authority, the court was without the power to grant such relief. *Doe,* 273 Md. at 264, 329 A.2d 35. The trial court sustained the demurrer, finding that the courts of equity were without authority to issue the relief sought. The Court of Appeals disagreed, holding that a court of equity possessed jurisdiction because it involved a constitutional question of the right to privacy. *Id.* at 273, 329 A.2d 35. The Court recognized that no general statutory remedy for expungement of criminal records existed at that time. *Id.* at 275, 329 A.2d 35. Although *Doe* recognized that a constitutional right to privacy exists that could permit one to have his or her criminal record expunged, the Court explained that this is an area lacking any statutory guidance. During the 1975 general assembly, Article 27, §§ 735–41, governing the expungement of criminal records, was enacted. 1975 Md. Laws, Chap. 260.

As stated, *supra,* we turn first to the words of the statute for guidance. The general assembly specifically excluded certain items from expungement:

. . .

(2) "Police records" does not include:

(i) Investigatory files;

. . .

Art. 27, § 735(e). It is clear from the language of this exclusion that the legislature did not intend to grant a citizen the ability to have his or her criminal record expunged, while crippling law enforcement officials and impeding their ability to conduct effective criminal investigations. The statute's exclusions are consistent with the recognition by the Court of Appeals in *Doe* that the right of a person to have a criminal record expunged is a balancing between the "need for public safety and effective law enforcement . . . [and] 'the right of the individual to privacy. . . .' " *Doe,* 273 Md. at 267–68, 329 A.2d 35 (quoting *Kolb v. O'Connor,* 14 Ill.App.2d 81, 142 N.E.2d 818, 822 (1957).) We stated in *Mora* that "[t]he individual's need for expungement, however, does not extend to protecting against future criminal prosecution, and the individual's privacy interest must be balanced against society's need for efficient law enforcement." *Mora,* 123 Md.App. at 715–16, 720 A.2d 934.

The plain words of the statute express the legislature's intent that, while generally police records and court records may be expunged and thereby denied public access under the statute, police may still maintain files of incidents and documentation to allow them to conduct continuing police investigations. There are many reasons a case may be *nol prossed* and police, who are charged with the enforcement of the criminal laws, cannot be limited in their lawful investigatory processes because an individual received an order of expungement based on the prosecutor's decision, for whatever reason, not to pursue the charges.

■ The same applies for an acquittal. Because a person is acquitted of the crime does not always mean that the person is not engaged in criminal activity. Often, the State may simply not be able to prove its case. The decision not to prosecute

does not—and cannot—affect the independent duty of law enforcement to continue to investigate and ultimately enforce the criminal laws of the State. The statute clearly limits the use of police investigative files and police work product of otherwise expunged material to investigative purposes only. It follows, therefore, that such investigative files maintained by police are not subject to expungement to the extent that they relate to a police investigation and any subsequent prosecution that directly relates to the subject of that police investigation.

■ The administrative hearing held in the instant case is not related to a police investigation, nor does it relate to the prosecution of appellant. There is no indication from the record that the police were conducting a continuing investigation in this case. Disclosure to an agency outside of the police department, therefore, was inappropriate, and any evidence admitted at the administrative hearing that stemmed from that file was inadmissible. Accordingly, the administrative law judge erred as a matter of law in allowing any evidence admitted from the police investigative file, or any testimony based on information contained in the investigative file. Consequently, the circuit court correctly directed the ALJ to determine, on the remand of appellant's case, if the testimony offered by the police officers was based on information maintained in the investigative file or came from the police officers' independent recollection of the incident. The agency's decision concerning the officers' testimony is a question of fact and we must apply the clearly erroneous and substantial evidence tests.

**B**

### Basis Of Testimony

Appellant maintains that the officers' testimony at the second administrative hearing could not possibly have been based on their independent recollection, and was, in fact, based on information in the officers' investigative file, which they were not at liberty to disclose outside of a police investigation.

When the circuit court remanded the case for a second time, it instructed:

> [T]he [c]ourt remands this matter to the administrative agency for the purposes of determining whether the testimony of the police officers was based upon records which were subject to expungement as defined by the statute. The agency should determine the extent to which the testimony introduced at the hearing was first-hand knowledge, how much information officers obtained from records, and whether the records used were subject to expungement. Should the agency determine that officers testified from memory or used records not subject to expungement, then the decision of the Secretary should be affirmed. If the agency determines that the testimony was based on records which should have been expunged, then the decision of the Secretary of Personnel should be reversed without further order of this court.

Accordingly, another administrative hearing was held on June 10, 1998, at which time the ALJ limited the scope of the hearing to address the directive of the circuit court's remand (ALJ Seaton).

> Today's hearing is not a new *de novo* hearing, it is to determine whether the testimony introduced at the hearing before Judge McCloud was first-hand knowledge, how much the officers obtained from the records, and whether the records used were subject to expungement.
>
> . . .
>
> So the purpose of this hearing is for [the police officers] to testify about what evidence—what records, if any, they used to refresh their recollection. Whether they were expunged records, or just records that should have been expunged, or whether those were records that should not have been expunged.

The parties stipulated that, in order to determine the question before the ALJ, only the testimony of Officer Teare would be needed. He was the only witness to testify at the June 10,

1998 hearing. In her written decision, ALJ Seaton found that the officers' testimony during the administrative hearing conducted before ALJ McCloud on March 7, 1995 was based, not on expunged records, but on the officers' independent recollection of the arrest. She stated:

> I found Officer Teare's testimony completely credible. He was forthright and direct in his demeanor. On February 28, 1992, when Officer Teare arrested the [appellant], he was not on regular assignment, but was specially assigned. Thus, it was an unusual assignment, made all the more unusual when the [appellant] informed the arresting officers that he was a correctional officer and asked to be given a "break."

> Further, I find it entirely credible that the [sic] Officer Teare checked his file to refresh his recollection only as to the date of the arrest and the make and model of the vehicle.

> . . .

> I am not persuaded by the [appellant's] argument that it is impossible to believe that the officers could independently recall the particulars of the [appellant's] 1992 arrest at the March, 1995 hearing. . . . Moreover, for the purposes of the administrative hearing regarding the charges for removal, the relevant information concerns the basic facts of the arrest, not the type of minutia that would require referencing a document.

The circuit court was obliged to defer to the administrative hearing judge as to his opportunity to judge the credibility of the witnesses at trial. MD. RULE 8–131(c)(2000). The question of the credibility and believability of the witness's testimony at trial is within the fact-finding function of the administrative law judge and we may not disturb it simply because we disagree. We are required to determine whether there is relevant evidence that a reasonable mind would accept as adequately supporting the judge's conclusion. *Caucus Distributors, Inc. v. Maryland Securities*

*Comm'r*, 320 Md. 313, 324, 577 A.2d 783 (1990). The deference we provide to an agency's fact-finding also applies to the drawing of inferences from those facts. *Id.*

■ We perceive no error in the ALJ's conclusion that the testimony of the officers, concerning the basic facts of appellant's arrest from the hearing conducted on March 7, 1995, originated from their independent recollection of the incident, and not any information in any expunged records or investigative files. It is clear from ALJ Seaton's decision of September 9, 1998, that any testimony that did include information contained in the officers' investigative file was not dispositive in this case and, therefore, did not form the basis of the ALJ's decision.

Accordingly, we hold that, although the ALJ initially erred in admitting information contained in the police officers' investigative file because the administrative hearing is not a prosecution of any related continued criminal investigation against appellant and the record is otherwise expunged, the error was harmless, because the agency's ultimate decision was not based on any of that evidence. Hence, the agency did not err in upholding the dismissal of appellant.

## II

Appellant complains that the lower court erred in upholding the decisions of ALJ McCloud and ALJ Seaton to deny his request for further testimony of defense witnesses. He first requested the additional testimony in June 1997, well after the full hearing on the merits. At the June 10, 1998 proceeding, appellant renewed his request.

As support for his argument, appellant relies on State Government Article, § 10–222(f), which states:

(f)(1) Judicial review of disputed issues of fact shall be confined to the record for judicial review supplemented by additional evidence taken pursuant to this section.

(2) The court may order the presiding officer to take additional evidence on terms that the court considers proper if:

(i) before the hearing date in court, a party applies for leave to offer additional evidence; and

(ii) the court is satisfied that:

1. the evidence is material; and

2. there were good reasons for the failure to offer the evidence in the proceeding before the presiding officer.

(3) On the basis of the additional evidence, the final decision maker may modify the findings and decision.

(4) The final decision maker shall file with the reviewing court, as part of the record:

(i) the additional evidence; and

(ii) any modifications of the findings or decision.

MD.CODE (1999 Repl. Vol.), STATE GOV'T (S.G.) § 10–222(f). As the statute confers upon the court complete discretion to allow additional evidence, we shall not disturb the decision below denying appellant's request to subpoena three additional witnesses.

██ Both of the administrative law judges cited the limited scope of the proceedings as the basis for denial of the witnesses. Appellant's request was not made until after the circuit court remanded the case to the Office of Administrative Hearings. As noted, *supra*, that remand was limited to the court's determination as to what constituted the basis of the officers' testimony.

Appellant argues that the holding of the Court of Appeals in *Taylor v. State*, 346 Md. 452, 697 A.2d 462 (1997), is clearly applicable to this case and that he should be provided the opportunity to present new previously unavailable evidence. In *Taylor*, the defendant, like appellant, was charged with possession of marijuana. He had been found sleeping in the same hotel room where the police recovered the marijuana. The Court ruled that the defendant's conviction could not stand and was based on nothing more than speculation or

conjecture. *Id.* at 459, 697 A.2d 462. Appellant asserts here that the facts are similar and that the requested witnesses could provide evidence crucial to his case.

Although we recognize that *Taylor* was decided after appellant's full hearing on the merits, the holding by the Court of Appeals, in our view, is not controlling authority. Nor does appellant offer any explanation as to why the testimony these witnesses could provide was previously unavailable. At least one of the witnesses arrested with appellant was obviously known to appellant at the time of the hearing on the merits and could have been called at that time. One of the other witnesses, appellant claims, could testify as to the ownership of the car. All of this proffered evidence was relevant before the holding in *Taylor*, and could have been presented to the hearing officer at the time the case was heard on the merits. Appellant may not rely on *Taylor* as authority for admission of this evidence now. Significantly, our review of the record of the hearing held June 10, 1998 reveals that appellant articulated nothing to the ALJ about *Taylor*, which had been decided by the Court.

Appellant had ample opportunity fully to present his case, and his requests to ALJ McCloud and ALJ Seaton came only after the case was remanded for a narrow determination on the issue of the officers' testimony. The trial court did not abuse its discretion in the denial of appellant's request to present additional witnesses that were available and known at the time of the hearing on the merits.

### III

Appellant's final contention involves the denial by ALJ Seaton to provide the personnel file of ALJ McCloud to appellant. The request was made because apparently appellant's counsel discovered, on November 25, 1997, that McCloud was seeking employment with DOC—appellant's employer. McCloud had issued two written decisions in appellant's case in October 1997—both concerning motions for continuance of the case—and had additionally denied appellant's motion to

subpoena three witnesses. Appellant asserts that, if McCloud had been in negotiations with DOC at that time, a conflict of interest would have existed and appellant's previous request for McCloud to recuse himself from the proceedings [2] should have been granted. Appellant asserted that he was entitled to the discovery of McCloud's personnel file.

At the June 10, 1998 hearing, ALJ Seaton asked appellant to articulate how the request for McCloud's personnel file was relevant to the proceedings being held that day. Appellant's counsel responded:

> ... back in March 1997 we think he should have recused himself, and then I think he should have recused himself, again, later when we requested it with the request for the three witnesses....

Subsequently, ALJ Seaton heard appellant on the request for the three witnesses and, as noted *supra*, denied the request, citing the limited scope of the circuit court's remand. ALJ Seaton further responded to appellant's argument concerning the request for recusal:

> Let's say you filed your motion to recuse Judge McCloud, and it's granted. He's recused. Well, let's just say instead of him leaving this office, the Executive Administrative [L]aw Judge determined that it was inappropriate for him to come in and hear this case, you would have gotten the relief you now have, a new [j]udge that would take a fresh look at the remand order, decide the scope of the remand order, and revisit the issues that Judge McCloud ruled on.

Additionally, she cited the limited scope of the remand, saying:

> The only issue before me at this time is whether the officers testified from expunged material.

---

**2.** Appellant had requested McCloud to recuse himself from the proceedings due to a lawsuit appellant had filed, naming McCloud as a party. McCloud refused to recuse himself, responding to appellant in a letter dated June 16, 1997, explaining that "neither I nor the Office of Administrative Hearings have been made aware of criminal/civil actions initiated by [appellant]. Should that occur, the matter will be addressed distinct and apart from the business of the Office of Administrative Hearings."

Now, I understand that you have this other—this concern about Judge McCloud, and I understand that you've articulated it well. It is that you believe that he may have issued decisions involving a party opponent that—at such time as he may have had some interest in deciding it in that person's favor because he was negotiating. I understand that.

. . .

And that's why I denied the request of the subpoena [for McCloud to testify], incidentally, because I didn't see how Judge McCloud's testimony was relevant today. You may want to have some discovery about Judge McCloud for some other case, but how is it relevant to this case?

We hold that this issue is moot. Appellant's reasons articulated for obtaining the file include McCloud's failure to recuse himself and McCloud's improper denial of appellant's request to subpoena three additional witnesses. As ALJ Seaton pointed out to appellant, in the event McCloud had recused himself, appellant's case would have merely been assigned to a new ALJ. That, in fact, occurred when McCloud left and ALJ Seaton was assigned the case, and she indicated that she had completely and independently reviewed all the issues of the case. She even overruled McCloud, to the benefit of appellant, on an issue of whether an affirmative defense had been raised. Moreover, there is no contention by appellant that McCloud's proposed decision of June 1995 on the merits was in any way affected by later negotiations between McCloud and DOC for employment. Our review of McCloud's decisions in October 1997 demonstrate well-articulated reasons for granting appellee's request for a continuance, which was required to subpoena the police officers. McCloud stated that, "other than a relevant proffer from the parties, the instructions set forth by the Circuit Court for Somerset County cannot be satisfied without the appearance and testimony of the two officers. No other reasonable alternative exists." Appellant also received a separate and independent review of his request for the additional witnesses from ALJ Seaton.

Accordingly, we perceive no error in the denial of access by appellant to McCloud's personnel file, because the issue was moot.

In sum, we hold that the ALJ erred by permitting testimony from police investigative files on what would otherwise be expunged records, in that the statute only excludes investigative files used solely for police investigation purposes and the scope of the hearings conducted in the case *sub judice* was clearly outside of that purpose. The error, however, was harmless. Additionally, we hold that the ALJ did not err in finding that the testimony of the police officers was based solely on their recollection, and that no testimony that formed the basis for the agency's decision was derived from expunged records. There was no abuse of discretion in the denial of appellant's request to present three additional witnesses, because a full hearing on the merits had already been conducted, the subsequent hearing was of limited scope, and appellant presented no compelling reason to allow further testimony. Finally, the ALJ did not err in denying appellant's request for access to McCloud's personnel file, based on a potential conflict of interest, as the issue was moot.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMER-SET COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**