769 A.2d 912

**Murray D. GIGEOUS**

v.

**EASTERN CORRECTIONAL INSTITUTION.**

**Misc. No. 69, Sept. Term, 2000.**

Court of Appeals of Maryland.

April 10, 2001.

John F. Conwell (Davis & Associates Law Offices, P.A., on brief), Towson, for petitioner.

Randolph Stuart Sergent, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

Murray D. Gigeous, Petitioner, challenges a judgment of the Circuit Court for Somerset County. The Circuit Court affirmed the administrative termination by the Maryland Department of Public Safety and Correctional Services (DPSCS), Division of Correction (DOC), Respondent, of Petitioner's employment at its Eastern Correctional Institution. Underlying Petitioner's termination was his arrest on 28 February 1992, while off duty, and his being charged in Anne Arundel County with the criminal offense of possession of a controlled dangerous substance. Respondent suspended Petitioner without pay, pending charges for removal, and ultimately dismissed Petitioner from his job on 15 July 1993.

Petitioner's dismissal was reviewed by three different Administrative Law Judges (ALJ) of the Maryland Office of Administrative Hearings (OAH) (the latter two as the result of judicial remands) and thrice reviewed by the Circuit Court for Somerset County. Petitioner contended then, as now, that his termination was based improperly on the records of his arrest and prosecution that had been expunged according to Maryland Code (1996, Repl.Vol., 1999 Supp.), Art. 27, § 737.[1] Ultimately, on 10 August 1999, the Circuit Court affirmed Petitioner's termination as appropriate because it was founded on police officers' testimony, based on their personal recollections and not on the expunged records. The Court of Special Appeals affirmed. *Gigeous v. Eastern Correctional Institution*, 132 Md.App. 487, 752 A.2d 1238 (2000). We granted

---

1. Maryland Code (1996, Repl.Vol., 1999 Supp.), Art. 27, § 737 states in pertinent part:

(a) *Petition for expungement generally.*—A person charged with the commission of a crime may file a petition setting forth the relevant facts and requesting expungement of the police records, court records, and other records maintained by the State of Maryland and its subdivisions, pertain to the charge if ... (4) A nolle prosequi is entered. ...

Petitioner's petition for writ of certiorari to consider the following questions: [2]

1. Did the Court of Special Appeals properly determine that a police officer who maintained and reviewed an investigative file prior to testifying in an administrative trial about the facts underlying an expunged criminal matter testified from his memory and not from the file?

2. Did the Court of Special Appeals incorrectly affirm the removal of Sergeant Gigeous by depriving him of meaningful challenge to the prior decision of an Administrative Law Judge who took a job with Gigeous's employer, Department of Public Safety and Correctional Services?

## I.

Petitioner was employed as a Correctional Officer III (Sergeant) by Respondent at its Eastern Shore Correctional Institution. On 28 February 1992, Petitioner was arrested by Anne Arundel County Police, off of DPSCS property and during his non-duty hours, and charged with possession of a controlled dangerous substance-marijuana. On 2 March 1992, Petitioner notified his supervisors of the arrest. Petitioner was placed on administrative suspension, without pay, from his job.[3] Respondent filed charges for termination, on 9 March 1992, against Petitioner.

---

2. In his brief to us, Petitioner framed an additional question, not contained in his petition:

Did the Administrative Law Judge commit error when she affirmed the removal of Sergeant Gigeous by denying his reasonable request for testimony from additional witnesses?

As this question was not presented to us in the petition for writ of certiorari, we shall not address it. *See* Md. Rule 8–131(b) (2000) (stating that, on appeal, "the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals").

3. On 2 March 1992, DPSCS issued an unsatisfactory report to Petitioner for unbecoming conduct—being arrested for the unlawful possession of a controlled dangerous substance—suspending him until charges for removal could be brought. As noted *supra,* Respondent brought

On 8 October 1992, the criminal charge pending against Petitioner was nol prossed by the Anne Arundel County State's Attorney Office in the District Court of Maryland, sitting in Anne Arundel County. Petitioner filed, on 13 October 1992, with the District Court a petition for expungement of records, pursuant to Maryland Code (1996, Repl.Vol., 1999 Supp.), Art. 27, § 737, *supra* note 1. On 22 December 1992, the District Court ordered that all records of Petitioner's arrest, including police records, be expunged.[4]

---

charges for removal on 9 March 1992. The Record does not contain Respondent's charging documents in support of the dismissal; however, in the first ALJ decision on 13 May 1993, ALJ Fowler determined that Petitioner had violated Department of Correction Directive (DCD) 50–2, § II.B.7 and § III.G.2.D (b) and COMAR 06.01.01.47(D), (E), and (M). *See infra* note 6.

4. Expungement, when referring to court or police records, as used in Art. 27 § 737(a)(4), means
   the effective removal of these records from public inspection:
   (1) By obliteration;
   (2) By removal to a separate secure area to which the public and others having no legitimate reason for being there are denied access; or
   (3) If effective access to a record can be obtained only by reference to other records, by the expungement of the other records, or the part of them providing the access.
   Md.Code (1996, Repl.Vol., 1999 Supp.), Art. 27, § 735(c). According to Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 § 735(b), "court records" refers to
   (1) . . . all official records maintained by the clerk of a court or other court personnel pertaining to a criminal proceeding. . . .
   (2) . . . [and] includes indices, docket entries, charging documents, pleadings, memoranda, transcriptions of proceedings, electronic recordings, orders, judgments, and decrees.
   According to Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 § 735(e), "police records" means
   (1) . . . all official records maintained by a law enforcement agency, a booking facility, or the Central Repository pertaining to the arrest and detention of or further proceeding against an individual for:
      (i) A criminal charge;
      (ii) A suspected violation of a criminal law. . . .
   (2) "Police records" does not include:
      (i) Investigatory files;
      (ii) Police work-product records used solely for police investigation purpose. . . .
   The Anne Arundel County Police Department certified that it complied with the Order of Expungement on 4 February 1993; the District

Petitioner appealed the charges of removal and, on 9 February 1993, a hearing was held before the OAH. Petitioner moved to have the charges for removal dismissed on that grounds that the State's Attorney's Office had entered a nolle prosequi in the criminal case. Based on the subsequent expungement of the records regarding the criminal charge, Petitioner also moved to exclude any evidence from police, court, or agency documentation, and testimony relating to his arrest or prosecution.

On 26 March 1993, ALJ Charles Fowler denied Petitioner's motion to dismiss, reasoning that, while a "judge of any criminal court may order an expungement,[5] and those responsive to his orders are required to obey[,] ... any underlying act for which there may be any proof [is] susceptible to being proven in support of a case in a court of another jurisdiction." On 27 April 1993, at the hearing on the merits before ALJ Fowler, Petitioner lodged a continuing objection to the introduction of the expunged documentary evidence as well as the testimony of the two Anne Arundel County police officers who participated in his arrest.

---

Court certified its compliance on 8 February 1993; and the Criminal Justice Information System certified its compliance on 11 February 1993. *See* Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 § 737(*l*) ("Every custodian of the police records and court records subject to the order, shall within 60 days after entry of the order, unless it is stayed pending an appeal, advise the court and the person in writing of compliance with the order."); Md. Rule 4–510 (2000) ("Within 30 days after service of a court order for expungement, every custodian of police records and court records subject to the order shall comply with the order, file an executed Certificate of Compliance, and serve a copy of the certificated on the applicant or petitioner.").

5.  Maryland Rule 4–504 (2000) states:

    A petition for expungement of records may be filed by any defendant who has been charged with the commission of a crime and is eligible under Code, Article 27, § 737 to request expungement. The petition shall be filed in the original action. If that action was commenced in one court and transferred to another, the petition shall be filed in the court to which the action was transferred. If an appeal was taken, the petition shall be filed in the circuit court that had jurisdiction over the action.

    *See also* Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 § 737(c).

Testimony from both arresting officers and the disputed documents concerning the arrest were admitted into evidence before ALJ Fowler. In particular, Officer James Teare, Sr., testified that, on 28 February 1992, he and fellow officer, Steve Jenkins, were assigned to uniformed patrol in Glen Burnie. At that time, a catering facility in the area was holding a concert. Officer Teare testified that as "the band was either just starting or" just completing a break, he noticed Petitioner and a companion leave the hall and get into a car in the parking lot. The officer stated that he observed Petitioner and his friend apparently drinking in the car, "in violation of the Anne Arundel County code," and, as a result, the two officers approached the car and asked Petitioner to get out. According to Officer Teare's testimony, when Petitioner got out of the car, Officer Teare smelled a strong odor of burnt marijuana on Petitioner and in the car.

Officer Teare continued that Petitioner informed him that he was a correctional officer and "explained that if he was arrested, this would ruin his career." Petitioner then told him that he had smoked all of the marijuana that he had in his possession; however, Petitioner's jacket was found to contain "a plastic baggy containing a greenish brown vegetable matter," that Officer Teare suspected was marijuana, and some rolling papers. Petitioner was arrested. Officer Teare conducted a field test on the matter in the plastic bag, which tested positive for marijuana. During his testimony before ALJ Fowler, Officer Teare did not rely outwardly on any documents. During cross-examination, Petitioner's attorney sought to show that Officer Teare's testimony was not credible; in the course of cross-examination, the arrest report and other documents were entered into evidence by Petitioner's attorney. Officer Jenkins also testified at the hearing that he smelled the odor of burnt marijuana while dealing with Petitioner's companion, but that he "had no dealings with [Petitioner] at all."

On 13 May 1993, ALJ Fowler issued a proposed decision affirming Petitioner's dismissal.[6] Petitioner filed exceptions to

---

6. ALJ Fowler determined that Petitioner should be dismissed as he had violated DCD 50–2 § II.B.7 and § III.G.2 (b) and COMAR

the proposed decision with the State Secretary of Personnel arguing, in part, that ALJ Fowler should have dismissed the case because the expunged records and testimony of the police officers should not have been received in view of the order of expungement. Following oral argument on the exceptions, the Secretary of Personnel, by a designee, filed an 15 July 1993 Order adopting as final findings and conclusions all of the recommended findings of fact and conclusions of law of ALJ Fowler.[7]

Petitioner sought judicial review in the Circuit Court for Somerset County. On 30 November 1994, the Circuit Court determined "that the testimony of the officers, to the extent that the testimony was from personal knowledge, was correctly admitted; however the [ALJ] erred when he admitted the expunged records." The Circuit Court further concluded that the failure to exclude the expunged records was not harmless.

---

06.01.01.47(D), (E), and (M). DCD 50–2 § II.B.7, Standards of Conduct, Personal Conduct states that "[t]he illegal possession and/or use of any controlled dangerous substance and/or controlled paraphernalia while on or off duty is strictly prohibited." DCD 50–2 § III.G.2 (b) regarding disciplinary action and drugs states, in part, that an employee "who is arrested for a [controlled dangerous substance] violation shall be suspended pending termination." COMAR 06.01.01.47, Causes for Removal, states, in part, that an employee may be "permanently removed from his position only for cause ... [and] only upon written charges" with an opportunity to be heard. COMAR 06.01.01.47 also states:

> D. That the employee has violated any lawful official regulation or order or failed to obey any lawful and reasonable direction given by his superior officer when the violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonably be expected to result in loss or injury to the State or the public;
> E. That the employee has been wantonly offensive in his conduct toward fellow employees, wards of the State, or the public....
> * * *
> M. That the employee has been guilty of conduct such as to bring the classified service into public disrepute.

7. During Petitioner's case, the statutes and regulations governing personnel cases for State of Maryland employees were significantly modified. In particular, effective 1 October 1996, the OAH was delegated authority to render final, rather than proposed, decisions concerning terminations of State employees. Md.Code (1993, 1997 Repl.Vol.), § 4–401 of the State Pers. and Pen. Article.

Accordingly, the Order of the Secretary adopting the ALJ's recommendation was deemed legally erroneous. The Circuit Court remanded the case for further consideration.

On 7 March 1995, a de novo hearing was held before a different ALJ, Dale McCloud. At this hearing, Officer Teare provided the same direct testimony as at the 27 April 1993 hearing, discussed *supra* pp. 488–89. On cross-examination, Officer Teare maintained that he was testifying strictly from his recollection, but that he had reviewed his "reports" prior to testifying. Neither party offered documentary submissions into evidence. On 21 June 1995, ALJ McCloud filed a proposed decision stating that, in following the Circuit Court's directions, *supra*, he determined that as long as the live testimony of the two officers was not based on expunged records, the testimony was admissible and subject "to an appropriate assignment of credibility." He further stated that

> [w]hile Officer Teare acknowledged during crossexamination that his memory was refreshed after reviewing his "reports," the matter was not further pursued, and the nature of the "reports" was not identified. Since [Petitioner] raises the claim, he must bear the burden to show that the Officer relied upon expunged reports. He failed to do so. The testimony of both officers will, therefore, be accepted.

ALJ McCloud then recommended that Petitioner be terminated, and on 5 September 1995, the Secretary of Personnel's designee filed an Order of the Secretary adopting ALJ McCloud's proposed decision.

Petitioner again sought judicial review in the Circuit Court, asserting that ALJ McCloud erred when he permitted testimonial evidence regarding the arrest and criminal charge for which the District Court had issued an order of expungement. On 5 December 1996, the Circuit Court penultimately remanded the case "for the purposes of determining whether the testimony of the police officers was based upon records which were subject to expungement" and to decipher "the extent to which the testimony introduced at the hearing was first-hand knowledge, how much information officers obtained from rec-

ords, and whether the records used were subject to expungement." The Circuit Court concluded:

> Should the agency determine that officers testified from memory or used records not subject to expungement, then the decision of the Secretary should be affirmed. If the agency determines that the testimony was based on records which should have been expunged, then the decision of the Secretary of Personnel should be reversed without further order of this court.

Upon this second remand, the case was set for another hearing before ALJ McCloud on 24 June 1997. On 12 June 1997, Petitioner requested that ALJ McCloud recuse himself, apparently on the ground that Petitioner had initiated a civil or criminal action against ALJ McCloud.[8] ALJ McCloud denied this request. One day before the scheduled hearing, Respondent was notified, for the first time, that Officers Teare and Jenkins would not appear at the hearing without subpoenas, although neither previously had required a subpoena to appear at the earlier administrative hearings. As such, the two officers did not appear at the 24 April 1997 hearing, at which Respondent presented a Motion for Continuance. Petitioner opposed a continuance and moved to dismiss Respondent's termination action. On 20 October 1997, after the parties briefed their respective positions, ALJ McCloud denied Petitioner's motion to dismiss the proceedings, reasoning that it would be impossible to resolve the points raised in the Circuit Court's remand order in either party's favor without the officers' participation. The ALJ opined:

> Given the nature of the Court's instructions, [Petitioner] would appear to have as much an interest in the appearance

---

**8.** The record extract is unilluminating as to the details of the supposed suit. According to a letter dated 16 June 1997 to Petitioner's attorney from ALJ McCloud, neither the ALJ nor the OAH, at the time, apparently was aware of any civil or criminal actions initiated by Petitioner against ALJ McCloud. ALJ McCloud also granted a Motion in Limine filed by Respondent ruling that Petitioner would not be permitted to produce additional witnesses at the upcoming hearing in view of the Circuit Court's limited purpose remand as expressed in its Order of 5 December 1996.

and testimony of the officers as the Agency. In the absence of their appearance and in the absence of relevant instructions from the Court, I would have no alternative but to defer to that record developed before me pursuant to the March 7, 1995 hearing. My opinion regarding that record is obviously well known and unchanged at this point.

He directed prospectively that the limited remand hearing be held on a date when the officers would be present by subpoena.

That hearing was held on 10 June 1998 before yet another ALJ, Leah J. Seaton.[9] The parties agreed that the purpose of the hearing was not a de novo re-adjudication, but was solely to determine the extent to which the officers' March 1995 testimony may have depended on expunged records for its vitality. Additionally, both parties agreed that only Officer Teare's testimony was necessary, as Officer Jenkins had not offered any additional relevant information.

Officer Teare testified that he recalled his previous testimony regarding the circumstances of Petitioner's arrest and that he had a general recollection of Petitioner's arrest both at the time of his prior testimony "and I do today." He then stated that, in preparation of his testimony in 1995, he had reviewed

---

**9.** ALJ McCloud left his employment as an ALJ for a position as a Management employer-employee representative with Respondent, the Maryland Division of Corrections, Department of Public Safety and Correction. ALJ Seaton refused to honor a request from Petitioner to inspect ALJ McCloud's personnel file to determine when ALJ McCloud first had spoken to the State about employment with Respondent and further refused to subpoena ALJ McCloud to testify at the 10 June 1998 hearing. At the hearing, ALJ Seaton explained:

I understand that you have ... this concern about Judge McCloud, and I understand that you've articulated it well. It is that you believe that he may have issued decisions involving a party opponent that ... at such time as he may had some interest in deciding it in that person's favor because he was negotiating.... I don't know anything about [that], and it certainly is not impacting what I'm going to do today.

Rather, ALJ Seaton concluded that had Petitioner "been successful last June in having [ALJ McCloud] recused, [Petitioner] would have gotten a fresh or new judge to consider the matters, and I did that.... [Y]ou've already gotten all the relief you could have gotten."

his investigative file, which he explained was the police officer's separate file, not the official and formal file kept by the Anne Arundel County Police Department at its Central Files location. Officer Teare further explained that the investigative file that he reviewed prior to the March 1995 hearing would have contained a copy of the incident report, a copy of the drug analysis, and copies of "the paperwork for the advice of rights for [Petitioner]." Office Teare stated that he did not remember exactly which documents he reviewed in the investigative file and that he did not have the file with him; however, to the extent that he reviewed the file at all, it was only for the purpose of refreshing his recollection as to the date of the arrest, location of the arrest, and the color, year and type or model of the vehicle. When asked whether he gleaned any other information from the documents in his investigative file, Officer Teare testified that he looked "specifically for that type of information. It's something that I could not pull from recollection. The rest of my testimony was from my personal recollection."

On 9 September 1998, ALJ Seaton issued a decision affirming the 21 June 1995 decision of ALJ McCloud.[10] Based on Officer Teare's most recent testimony that his 7 March 1995 testimony was based on his personal recollection of the events, except to the extent that he examined his investigative file to refresh his recollection as to the date and location of the arrest and the make and model of the vehicle that Petitioner occupied, ALJ Seaton concluded that the officers had not testified from expunged records.

ALJ Seaton grounded her decision primarily on an assessment of Officer Teare's credibility; ALJ Seaton "believed" that Officer Teare had testified from his recollection and found the Officer's testimony to be "completely credible." ALJ Seaton elaborated that she perceived that "it [was] entirely credible that ... Officer Teare checked his file to refresh his recollection only as to the date [and location] of the arrest and

---

10. *See supra* note 7.

the make and mode of the vehicle" and that Officer Teare only "used his 'file' to refresh his recollection about facts that can only be described as collateral to the issue at hand." ALJ Seaton concluded: "In short, all relevant and material testimony from the officers regarding the arrest of [Petitioner] on February 28, 1998 was based on their own independent recollections. Thus, it was properly admitted and considered by ALJ McCloud." Petitioner returned to the Circuit Court.[11] The Circuit Court upheld Petitioner's removal.

On appeal, the Court of Special Appeals affirmed Petitioner's termination. *Gigeous*, 132 Md.App. at 510, 752 A.2d at 1250. The intermediate appellate court determined that there was no error "in the ALJ's conclusion that the testimony of the officers, concerning the basic facts of [Petitioner's] arrest from the hearing conducted on March 7, 1995, originated from their independent recollection of the incident, and not any information in any expunged records of investigative files." *Gigeous*, 132 Md.App. at 505, 752 A.2d at 1247. The court elaborated that it is clear from "ALJ Seaton's decision of September 9, 1998, that any testimony that did include information contained in the officers' investigative file was not dispositive in this case and, therefore, did not form the basis of the ALJ's decision." *Id.* The court held that while it was error for any expunged records or records from an investigative file to have been introduced in the original hearing, "the error was harmless, because the agency's ultimate decision was not based on any of that evidence" and, thus, the agency did not err in upholding Petitioner's dismissal. *Id.*

The Court of Special Appeals also rejected Petitioner's claim that he should have been permitted to view ALJ McCloud's personnel file. *Gigeous*, 132 Md.App. at 509, 752 A.2d at 1250. The intermediate appellate court reasoned that, as ALJ Seaton pointed out, *supra* note 9, "in the event

---

11. Petitioner originally filed this petition for judicial review in the Circuit Court for Washington County. We do not know from this record why he filed there. In the interests of judicial economy, the case was transferred to the Circuit Court for Somerset County by a 3 March 1999 Order.

McCloud had recused himself, [Petitioner's] case would have merely been assigned to a new ALJ," which occurred "when McCloud left and ALJ Seaton was assigned the case." *Id.* Once ALJ Seaton conducted a complete and independent review of all of the issues of the case, as she indicated that she did, the question of when ALJ McCloud began considering employment with Respondent became moot. *Gigeous*, 132 Md.App. at 509–10, 752 A.2d at 1250.

■ We determine that ALJ Seaton did not abuse her discretion when she concluded that the officers testified from their independent recollection and that such conclusion was supported by substantial evidence on the record. We further conclude that any testimony resulting from examination of the officers' investigative files was collateral. Lastly, we resolve that the Court of Special Appeals was correct in determining that the issue regarding Petitioner's viewing of ALJ McCloud's personnel file was moot.

## II.

■ We review an administrative agency's decision under the same statutory standards as the Circuit Court.[12] Therefore, we reevaluate the decision of the agency, not the decision

---

12. The standard and scope of review imposed on a circuit court, and thus an appellate court, in contested cases subject to the State Administrative Procedure Act (APA) is found in Maryland Code (1984, 1999 Repl.Vol.), § 10–222(h) of the State Government Article, which states:

   (h) *Decision.*—In a proceeding under the section, the court may:
   (1) remand the case for further proceedings;
   (2) affirm the final decision; or
   (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision;
     (i) is unconstitutional;
     (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
     (iii) results from an unlawful procedure;
     (iv) is affected by any other error of law;
     (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitter; or
     (vi) is arbitrary or capricious.
   The present case is subject to the State APA.

of the lower court. *Public Serv. Comm'n v. Baltimore Gas & Elec. Co.*, 273 Md. 357, 362, 329 A.2d 691, 694–95 (1974). Moreover, in *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, 650 A.2d 226 (1994), we stated generally that "[j]udicial review of administrative agency action is narrow. The court's task on review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency." 336 Md. at 576–77, 650 A.2d at 230 (internal quotation marks omitted) (quoting *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978)); *see also Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene*, 330 Md. 433, 442, 624 A.2d 941, 945 (1993) ("Judicial review of agency fact finding is narrow in scope and requires the exercise of a restrained and disciplined judicial judgment." (citing *Supervisor v. Asbury Methodist Home*, 313 Md. 614, 626, 547 A.2d 190, 195 (1988))).

We expounded upon this doctrine in *Board of Physician v. Banks*, 354 Md. 59, 729 A.2d 376 (1999):

> Despite some unfortunate language that has crept into a few of our opinions, a "court's task in review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency." ... Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.... Furthermore, the expertise of the agency in its own field should be respected.

*Banks*, 354 Md. at 68–69, 729 A.2d at 381 (internal quotation marks omitted) (citations omitted) (footnotes omitted).

We, however, "may always determine whether the administrative agency made an error of law. Therefore, ordinarily the court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Baltimore Lutheran High*

*Sch., v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985). Regarding the substantial evidence test, we explained in *Baltimore Lutheran High School, supra:*

> That is to say, a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decisions of an administrative agency, but it must not itself make independent findings of fact or substitute its judgment for that of the agency.

*Baltimore Lutheran High Sch.,* 302 Md. at 662, 490 A.2d at 708. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978) (internal quotation marks omitted) (quoting *Snowden v. Mayor and County Council of Baltimore,* 224 Md. 443, 448, 168 A.2d 390 (1961)). In *Baltimore Lutheran High Sch., supra,* we further explained:

> The scope of review is limited to whether a reasoning mind could have reached the factual conclusion the agency reached. In applying the substantial evidence test, the reviewing court should not substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken. The reviewing court also must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity. Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.

*Baltimore Lutheran High Sch.,* 302 Md. at 662–63, 490 A.2d at 708 (citing *Bulluck,* 283 Md. at 512–13, 390 A.2d 1119); *see Motor Vehicle Administration v. Karwacki,* 340 Md. 271, 283–84, 666 A.2d 511, 516–17 (1995); *Liberty Nursing,* 330 Md. at 442–43, 624 A.2d at 945–46; *Bulluck,* 283 Md. at 512–13, 390 A.2d at 1124;

### III.

### A. Expunged Records

Petitioner's flagship argument is that Respondent "never should have been allowed to offer the testimony of the police officers who reviewed the expunged material" because the language of the expungement statute, Md.Code (1996, Repl. Vol., 1999 Supp.), Art. 27, § 737, *supra* note 1, "clearly prohibits disclosure and review of the expunged material . . . and the general policy concerns underlying the statute is to prevent situations such as this from arising." Petitioner's Br. at 20–21. Petitioner further contends that "[n]o citizen who receives the extraordinary benefit of expungement should be subjected to the use of the expunged information to deprive him of gainful employment." *Id.* at 21.

We granted certiorari in this case principally to consider important matters regarding the intent and scope of the "investigatory files" exception to the definition of "police records" provided for in the expungement statute [13] and the ramifications flowing from the expungement of the criminal case records in this case upon the related administrative action of Petitioner's dismissal from State employment. As presented in the petition for writ of certiorari, it appeared that the present case was an appropriate vehicle for this Court to explore this relatively uncharted territory. As occasionally happens, however,[14] we discovered, after briefing and oral argument, that the vehicle lacked a full tank of gas. Upon closer examination, the record of the present case provided a compelling and fundamental reason not to embark on our intended journey. Thus, we shall not address here these important questions concerning the expungement statute. Concomitantly, we shall neither bless nor curse the positions taken in the Court of Special Appeals's opinion directed to

---

**13.** Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 § 735(e)(1) & (e)(2), *supra* note 4.

**14.** *Cf. Mastandrea v. North*, 361 Md. 107, 124, 760 A.2d 677, 686 (2000).

interpretation or application of the statute. *Gigeous,* 132 Md.App. at 496–502, 752 A.2d at 1243–46 (discussing *Mora v. State,* 123 Md.App. 699, 720 A.2d 934 (1998), *aff'd on other grounds,* 355 Md. 639, 735 A.2d 1122 (1999)).

■ Although the admissibility of the officers' testimony is a question of law, as the Court of Special Appeals noted, "the determination by the agency that the officers' testimony was not based on inadmissible evidence, i.e., expunged records, is a matter of the agency's fact-finding process, which is subject, on appellate review, to the [deferential] standard" of substantial evidence. *Gigeous,* 132 Md.App. at 495–96, 752 A.2d at 1242–43. ALJ Seaton believed Officer Teare's testimony that he did not rely on, or refresh his recollection, as to any material fact from any police record that arguably fell within the scope of those records covered by the expungement statute or the District Court order in this case. ALJ Seaton's "judgment call" in this regard was quintessentially one involving the assessment of witness credibility. As the Court of Special Appeals concluded:

> [T]he circuit court correctly directed the ALJ to determine, on the remand of [Petitioner's] case, if the testimony offered by the police officers was based on information maintained in the investigative file or came from the police officers' independent recollection of the incident. The agency's decision concerning the officers' testimony is a question of fact and we must apply the clearly erroneous and substantial evidence tests.

*Gigeous,* 132 Md.App. at 502, 752 A.2d at 1246. It is this latter part—the question of fact regarding the agency's decision concerning the well-spring of the officers' testimony— upon which our decision turns. To the extent the officers testified from something other than personal memory, it was as to inconsequential and collateral matters. Therefore, Petitioner's argument regarding the province of the expungement statute and the effect of the expungement order in Petitioner's criminal case, on this dismissal action, is not material to our decision on this record.

## B.   Basis of Testimony

Petitioner asserts that Officer Teare's testimony was based on the expunged records and not on his memory of the events. According to Petitioner, Officer Teare "had a long and close association with the expunged documents in this case"; the officer, on numerous occasions, came into contact with the expunged documents [15] creating what Petitioner refers to as a "pyramiding effect," which "shaped" Officer Teare's testimony. This argument is unavailing.

When the Circuit Court remanded the case for the second time on 5 December 1996, as noted *supra* pp. 490–91, the court instructed:

[T]he Court remands this matter to the administrative agency for the purposes of determining whether the testimony of the police officers was based upon records which were subject to expungement as defined by the statute. The agency should determine the extent to which the testimony introduced at the hearing was first-hand knowledge, how much information officers obtained from records, and whether the records used were subject to expungement. Should the agency determine that officers testified from memory or used records not subject to expungement, then the decision of the Secretary should be affirmed. If the agency determines that the testimony was based on records which should have been expunged then the decision of the Secretary of Personnel should be reversed without further order of this court.

At the 10 June 1998 administrative hearing, ALJ Seaton clearly delineated the purpose of the hearing. She noted her understanding that the Circuit Court remanded the case for

---

**15.** According to Petitioner, Officer Teare came into contact with the expunged documents "at least five times after [Petitioner's] arrest and at least four times since the Court granted [Petitioner's] expungement order on 22 December 1992, including when the officer wrote his initial report on Petitioner's arrest on 28 February 1992, when he attend Petitioner's criminal trial on 8 October 1992, and when he identified the documents and answered questions about them at the 27 April 1993 hearing in front of ALJ Fowler." Petitioner's Br. at 22–24.

the sole purpose of determining whether the officers testified from records that were subject to expungement. In this regard, she explained:

> Today's hearing is not a new de novo hearing, it is to determine whether the testimony introduced at the hearing before [ALJ] McCloud was first-hand knowledge, how the officers obtained from the records, and whether the records used were subject to expungement.
>
> \* \* \*
>
> If I determine that the officers testified from memory or used records not subject to expungement, then I should affirm the decision of the Secretary. If I determine otherwise, then I should reverse the decision of said case.
>
> So the purpose of this hearing is for [the officers] to testify about what evidence—what records, if any, they used to refresh their recollection. Whether they were expunged records, or whether those were records that should not have been expunged.

Both parties agreed that only Officer Teare's testimony was necessary on this score. In her written decision, ALJ Seaton concluded from that testimony that the officers' testimony during the administrative hearing conducted before ALJ McCloud on 7 March 1995 was based on the officers' independent recollections and not in any meaningful way on the expunged records. She found as fact that "[a]t the hearing held before ALJ Dale McCloud on March 7, 1995, the testimony of the police officers regarding the [Petitioner's] possession of a controlled, dangerous substance *was from memory, and was not based on the review of expunged records.*" (Emphasis added). ALJ Seaton also determined as a matter of fact that "[w]hen testifying on March 7, 1995, Officer Teare relied on information contained in his own 'file' regarding the arrest to refresh his recollection of the date of the arrest and the make and model of the vehicle, *neither of which was central to the decision* made by ALJ McCloud." (Emphasis added).

ALJ Seaton explained:

[Officer Teare] stated that his testimony on March 7, 1995 was based on his own recollection of events, except that he had looked at his 'file' to refresh his recollection as to the date of the arrest and the make and model of the vehicle.

Based on that testimony, I conclude that the officers did not testify from expunged records. *First and foremost, I believe Officer Teare when he states that he testified from his recollection at the March 7, 1995 hearing.* Contrary to the arguments advanced by counsel for [Petitioner], I found Officer Teare's testimony completely credible. He was forthright and direct in his demeanor. On February 28, 1992, when Officer Teare arrested the Employee, he was not on regular assignment, but was specially assigned. Thus, it was an unusual assignment, made all the more unusual when the Employee informed the arresting officers that he was a correctional officer and asked to be given a 'break.'

Further, I find it entirely credible that ... Officer Teare checked his file to refresh his recollection only as to the date of the arrest and the make and model of the vehicle. This type of detail is typically elicited from police officers in the type of proceeding, criminal trial, where police officers generally testify. It is not surprising, therefore, that a police officer would want to re-familiarize himself with the minutia of an arrest, since he would expect to be questioned about it in a criminal trial. (Emphasis added).

Because the issue of whether the officers relied on their memories in testifying was a question of fact, and ALJ Seaton found as fact that the officers relied on their memories and that any facts for which they turned to their personal investigative file to refresh their recollections were collateral, we employ the substantial evidence test, *supra* pp. 496–98, to determine the correctness of the ALJ's determinations. The question becomes could "[r]easoning minds ... reasonably reach the conclusion reached by the agency from the facts in the record," and, therefore, are the findings based "upon substantial evidence, ... [for which] the court has no power to reject" these findings? *Liberty Nursing,* 330 Md. at 443, 624 A.2d at 946 (citing *Snowden* 224 Md. at 448, 168 A.2d at 392);

*see Ramsay, Scarlett & Co. v. Comptroller of the Treasury,* 302 Md. 825, 838–39, 490 A.2d 1296, 1303 (1985). Because "a reviewing court may not substitute its judgment for that of the" agency, and because "the court must review the ... [administrative decision] in the light most favorable to the ... [agency] (the ... [agency's] decision is prima facie correct and carries the presumption of validity)," the decision, it is reasoned, "must be left undisturbed." *Baltimore Lutheran High Sch.,* 302 Md. at 663–64, 490 A.2d at 709.

■ That the ALJ made her findings based on the *credibility* of Officer Teare's testimony is a classic situation for application of these precepts. We stated in *Motor Vehicle Administration v. Karwacki,* 340 Md. 271, 666 A.2d 511 (1995), that "[o]ften the resolution of conflicting evidence and inconsistent inferences involves making credibility determinations. In this area, as well, it is no less true that the reviewing court may not substitute its judgment for that of the agency." 340 Md. at 284, 666 A.2d at 517 (citing *Baltimore Lutheran High Sch.,* 302 Md. at 662, 490 A.2d at 701; *Board of Education v. Waeldner,* 298 Md. 354, 363, 470 A.2d 332, 336 (1984); *Resetar v. State Board of Education,* 284 Md. 537, 554, 399 A.2d 225, 234 (1979)); *see also Anderson v. Department of Pub. Safety & Correctional Servs.,* 330 Md. 187, 216–17, 623 A.2d 198, 212–13 (1993) (stating that an agency, when examining the decision of an administrative law judge and particularly where the assessment of the credibility of witnesses is pivotal, should "give appropriate deference to the opportunity of the examiner to observe the demeanor of the witnesses," and the agency should reject credibility assessments only if it gives "strong reasons").

Petitioner, nonetheless, avows that Officer Teare's testimony was not credible and that his memory is not as stable or reliable as Respondent would have the Court believe. Petitioner contends that doubt is cast on the officer's credibility because the officer testified generally on 10 June 1998 that he had a vague recollection of a lot of the arrests that he had made during his law enforcement career. Petitioner claims

that, confirming this taint of general unreliability, on 7 March 1995 the officer testified that he could not recall the specifics of a conversation about the jacket in which the marijuana was found, and that he "believed" that the jacket belonged to Petitioner because Petitioner did not disavow his ownership of it at the time. Comparing this with the officer's claim on 27 April 1993 that Petitioner "explained that it was his coat," Petitioner asserts that a reasonable mind necessarily would conclude that Officer Teare reviewed his personal investigative file prior to testifying on each and every occasion, thus exposing and relying on the contents of the expunged records contained there.

■   The asserted testimonial discrepancy, assuming for the sake of argument that to be an accurate description, in no way leads to the inescapable conclusion that a reasoning mind necessarily would have concluded the officer generally to be bereft of credibility. In any event, on the record of this case, that call is left properly to the administrative fact-finder, unless a reasoning mind could not have found but otherwise. That latter scenario is not the case here. ALJ Seaton expressly stated why she determined Officer Teare's testimony to be credible. *See supra* pp. 502–03. She also provided a favorable evaluation of Officer Teare's demeanor. *See supra* pp. 502–03. We review the agency's explanation of the factual bases of its decision in the most favorable light possible as decisions of administrative agencies are prima facie correct and "not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences." *Baltimore Lutheran High Sch.*, 302 Md. at 662–63, 490 A.2d at 708 (citing *Bulluck*, 283 Md. at 512–13, 390 A.2d 1119); *see Caucus v. Maryland Securities*, 320 Md. 313, 324, 577 A.2d 783, 789 (1990) ("This deference [to decisions of administrative agencies] applies not only to agency fact-finding, but to the drawing of inferences from the facts as well." (citing *St. Leonard Shores Joint Ven. v. Supervisor*, 307 Md. 441, 447, 514 A.2d 1215 (1986))). Therefore, we conclude, as did the Court of Special Appeals, that there is no error "in the

ALJ's conclusion that the testimony of the officers, concerning the basic facts of [Petitioner's] arrest from the hearing conducted on March 7, 1995, originated from their independent recollection of the incident, and not any information in any expunged records or investigative files." *Gigeous,* 132 Md. App. at 505, 752 A.2d at 1247.

ALJ Seaton found as a fact that "[w]hen testifying on March 7, 1995, Officer Teare relied on information contained in his own 'file' regarding the arrest to refresh his recollection of the date of the arrest and the make and model of the vehicle, *neither of which was central to the decision* made by ALJ McCloud." (Emphasis added). As stated, *supra,* whether the officer's personal investigative file forms a part, or contains some, of the expunged records is not material to the central issues presented in this employment termination action.

ALJ Seaton explained:

I agree with [Respondent] that Officer Teare used his "file" to refresh his recollection about facts that can only be described as *"collateral"* to the issue at hand. The first fact, the date of the arrest, was not even in dispute and became known to [Respondent] when [Petitioner] himself informed [Respondent] on March 2, 1992. In addition, there can be no doubt that the type of vehicle [Petitioner] was operating on the night of his arrest is a *tangential fact,* at best, in the administrative hearing concerning [Petitioner's] discharge. Indeed, the only relevant issue for this proceeding is whether [Petitioner], a Correctional Officer III, had marijuana in his possession when stopped by the officers on February 28, 1998.

＊ ＊ ＊

Moreover, for the purposes of the administrative hearing regarding the charges for removal, the relevant information concerns the basic facts of the arrest, not the type of minutia that would require referencing a document. The critical facts found by ALJ McCloud were that [Petitioner] was arrested because marijuana was found in a jacket

believed by the officer to be [Petitioner's], that [Petitioner] had the strong odor of marijuana on him when approached by the police officers on February 28, 1992, and that [Petitioner] identified himself as a correctional officer and asked for a "break" to same his job. Based on those facts, ALJ McCloud found that [Petitioner] was in possession of marijuana on February 28, 1992. I have no problem believing that the officers, on March 7, 1995, testified to those essential facts, which are the basis for ALJ McCloud's decision, from their own respective recollection. (Emphasis added).

It is clear that ALJ Seaton did not abuse her discretion in finding Officer Teare's testimony to be credible or err by determining any facts traceable for testimonial purposes directly to the officer's review of his personal investigative file were merely collateral to the issue at hand and did not form in any meaningful way the foundation of ALJ McCloud's or her decision in this case.

### III.

■ The second question contained in Petitioner's certiorari petition was whether ALJ Seaton improperly denied Petitioner's request to review ALJ McCloud's personnel file to determine whether any impropriety existed with regard to McCloud's taking a position with Respondent. As explained, *supra* note 9, ALJ Seaton denied Petitioner's request to examine the personnel file of ALJ McCloud. Petitioner made the request because apparently Petitioner's counsel discovered, on or about 25 November 1997, that ALJ McCloud had sought employment with Respondent.

As discussed *supra* pp. 489–91, McCloud first sat as an ALJ in this case on 7 March 1995 and filed a proposed decision on 21 June 1995, recommending that the termination of Petitioner's employment be upheld. On 12 June 1997, Petitioner requested that ALJ McCloud recuse himself on the ground that Petitioner had initiated a civil or criminal action against ALJ McCloud. *See supra* note 8 and accompanying text. In October of 1997, ALJ McCloud issued two written decisions in Petitioner's employment termination case, both of which con-

cerned motions for continuance. At the same time, ALJ McCloud denied Petitioner's motion to subpoena three additional witnesses. Petitioner argues that if ALJ McCloud issued these rulings at a time when he was pursuing employment with Respondent, then a conflict of interest would have existed, and ALJ McCloud should have recused himself.[16]

At the hearing on 10 June 1998, ALJ Seaton asked Petitioner to explain how discovery of ALJ McCloud's personnel file would be relevant to the present case. Petitioner elaborated:

Because in the motions that were made—or the subpoenas were issued, and that he [ALJ McCloud] ruled on in October of 1997, for three additional witnesses, he denied that. We also asked him to recuse himself earlier. I think it was back in March of 1997.

ALJ Seaton then responded to Petitioner:

Well, here's what would have happened. Let's say you filed your motion to recuse Judge McCloud, and it's granted. He's recused. Well, let's just say instead of him leaving this office, the Executive Administrative Law Judge determined that it was inappropriate for him to come in and hear this case, you would have gotten the relief you now have, a new Judge that would take a fresh look at the remand order, decide the scope of the remand order, and revisit the issues that Judge McCloud ruled on.

ALJ Seaton observed, "I already did that." Additionally, she noted the limited scope of the judicial remand:

The only issue before at this time is whether the officers testified from expunged material.

---

**16.** At the hearing on 10 June 1998, Petitioner's attorney explained to ALJ Seaton that

from the time he [ALJ McCloud] wrote his decision to the time we were informed was about a month's period of time. We don't know how much prior to that this had been going on. As I said at the last hearing, what we were concerned about was that if Judge McCloud was making decisions in this case and was involved in this case while he was seeking employment with DOC, we should know that, and we asked for that information.

Now, I understand that you have this order—this concern about Judge McCloud, and I understand that you've articulated it well. It is that you believe that he may have issued decisions involving a party opponent that—at such time as he may have had some interest in deciding it that person's favor because he was negotiating. I understand that.

\* \* \*

And that's why I denied the request of the subpoena [for former ALJ McCloud to testify], incidentally because I didn't see how Judge McCloud's testimony was relevant today. You may want to have some discovery about Judge McCloud for some other case, but how is that relevant to this case?

In her 9 September 1998 proposed decision, ALJ Seaton explained that ALJ McCloud's personnel records were irrelevant to the present case and concluded that "whatever concerns [Petitioner] had as to ALJ McCloud's rulings ... became moot, when the two matters were reviewed and decided by a different ALJ." On appeal, the Court of Special Appeals agreed and declared the issue moot because "in the event McCloud had recused himself, [Petitioner's] case would have merely been assigned to a new ALJ," and "[t]hat, in fact, occurred when McCloud left and ALJ Seaton was assigned the case," providing an "independent[ ]" review of the case and its issues. *Gigeous*, 132 Md.App. at 509, 752 A.2d at 1250. We agree.

In support of his contention, Petitioner contends that ALJ McCloud's recusal was warranted based on COMAR 28.02.01.08(C)(1)(a) [17] and on *Regan v. Board of Chiropractic Examiners*, 355 Md. 397, 735 A.2d 991 (1999). Petitioner lifts and employs from *Regan* our statement that "[p]rocedural due

---

17. COMAR 28.02.01.08(C)(1)(a) regarding the disqualification and substitution of administrative law judges states:

(1)Conditions.

(a) A judge shall withdraw from participation in any proceeding in which personal bias or other reasons render the judge unable to provide an impartial hearing and decision, or when appearance of impropriety may reasonably be inferred from the facts.

process, guaranteed to persons n this State by Article 24 of the Maryland Declaration of Rights, requires that administrative agencies performing adjudicatory or quasi-judicial functions observe the basic principles of fairness as to parties appearing before them." *Regan,* 355 Md. at 408, 735 A.2d at 997 (internal quotation marks omitted) (alteration in original) (quoting *Maryland State Police v. Zeigler,* 330 Md. 540, 559, 625 A.2d 914, 923 (1993)). Petitioner also notes that we stated in *Regan* that "[t]he doctrine that every person is entitled to a fair and impartial hearing 'applies to an administrative agency exercising judicial or quasi-judicial functions', and 'is specifically applicable' to issues of disqualification, although 'disqualification will not be permitted to destroy the only tribunal with power in the premises.'" *Regan,* 355 Md. at 408–09, 735 A.2d at 997 (quoting *Board of Medical Examiners v. Steward,* 203 Md. 574, 582, 102 A.2d 248, 251–52 (1954)).

Petitioner posits that doubt as to impartiality was present when ALJ McCloud favored positions taken by the agency where he later became employed. An investigation of McCloud's personnel records would have made his impartiality clear, Petitioner declaims. Petitioner continues that McCloud's refusal to recuse himself

is not merely harmless error or somehow rendered moot. Acting as an ALJ, McCloud specifically breathed life into this case when the Department failed to subpoena witnesses to the administrative trial.... The State's failure to properly secure its witnesses should have resulted in a decision favoring [Petitioner]. Instead, McCloud granted the Department—his future employer—a continuance to correct their failure to request that these Police Officers be compelled to attend.... The Agency failed to meet its burden at this juncture, yet ALJ McCloud forgave this blatant error by the Department of Public Safety & Correctional services, his future employer.

Petitioner's Br. at 29–30.

Assuming, as did ALJ Seaton and the Court of Special Appeals, that ALJ McCloud's conduct, at least presented a

situation where a reasonable inference could be drawn of the appearance of impropriety, Petitioner effectively was afforded the relief to which he might have been entitled had recusal been found to be appropriate—a new hearing in front of a different administrative law judge. Thus, the issue is moot. *See Board of Physician Quality Assurance v. Levitsky*, 353 Md. 188, 200, 725 A.2d 1027, 1033 (1999) ("A question is moot 'if, at the time it is before the court, there is no longer an existing effective remedy which the court can provide.' " (quoting *Attorney General v. A.A. Co. School Bus*, 286 Md. 324, 327, 407 A.2d 749, 752 (1979)) (citing *Insurance Commissioner v. Equitable*, 339 Md. 596, 613, 664 A.2d 862, 871 (1995))). As the intermediate appellate court observed, ALJ Seaton not only independently reviewed ALJ McCloud's rulings, but also overruled him, on one point, to the advantage of Petitioner, when she stated at the 10 June 1998 hearing: "I disagree with Judge McCloud's ruling that shifting of—somehow the burden had shifted away from the proponent of the testimony of the officers." [18] As to Petitioner's earlier request for additional witness subpoenas, which ALJ McCloud rejected, ALJ Seaton conducted an independent review and concluded that, upon examination of the Circuit Court's remand order, there was no "room for latitude in that remand order for the taking of additional testimony."

---

**18.** ALJ Seaton stated in her 9 September 1998 proposed decision:

I disagree with ALJ McCloud's ruling, however, that the burden of proving the officers testimony was not admissible had shifted to [Petitioner]. ALJ McCloud reasoned that, unless the officers appeared at a hearing following the second remand and testified that their testimony was based on expunged records, then his decision sustaining the charges for removal would stand. ALJ McCloud also reasoned that [Petitioner's] objection to the testimony of the officers constituted an affirmative defense and shifted the burden of showing that their testimony was inadmissible to [Petitioner].

I disagree. [Respondent] bore the burden of proof in the case on the merits and relied entirely on the testimony of the officers to establish the alleged misconduct which supported the charges for removal.... Any other reading of Judge Long's Order would have the incongruous result of compelling [Petitioner] to validate the evidence [Respondent] produced against him.

Lastly, ALJ McCloud, in October 1997, in granting Respondent's motion for a continuance to ensure the presence of the two officers, as noted *supra*, provided a well-articulated, reasonable, and logical explanation for granting the continuance. He stated:

> [T]he instructions set forth by the Circuit Court of Somerset County cannot be satisfied without the appearance and testimony of the two officers. No other reasonable alternative exists. Moreover, the Court's instructions were not intended to further perpetuate a hearing on the merits of this matter, but clearly limit the scope of the administrative proceeding to the source of the officers testimony regarding the merits.... Given the nature of the Court's instructions, [Petitioner] would appear to have as much an interest in the appearance and testimony of the officers as the Agency. In the absence of their appearance and in the absence of relevant instructions from the Court, I would have no alternative but to defer to that record developed before me pursuant to the March 7, 1995 hearing.

Consequently, we find no fundamental unfairness or prejudice to Petitioner in the denial of access to ALJ McCloud's personnel file as the issue was moot.

*JUDGMENT AFFIRMED, WITH COSTS.*